STATE

v.

Edmond A. BRISSON.

No. 91–187–C.A..

Supreme Court of Rhode Island.

Feb. 4, 1993.

**1100**

James E. O'Neil, Atty. Gen., Annie Goldberg, and Jeffrey Greer, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender, Catherine Gibran, and Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

FAY, Chief Justice.

The defendant, Edmond A. Brisson, appeals from a Superior Court conviction whereby he was found guilty of first-degree sexual assault. The defendant was sentenced to sixteen years' imprisonment with eight years to serve, eight years suspended, and eight years' probation. The defendant contends the trial justice erred (1) by denying the defendant's motion to dismiss the indictment because of prosecutorial misconduct and (2) by improperly allowing impeachment of a defense witness.

Prior to trial a hearing was held pursuant to defendant's motion to dismiss the indictment based on prosecutorial misconduct. The defendant contended that the state's nondisclosure of certain reports violated defendant's right to due process and violated Rules 16 and 17 of the Superior Court Rules of Criminal Procedure. The defendant argued that the state had failed to comply with his request for disclosure of certain records from the Department for Children and Their Families (DCF).[1] The requested records were subsequently lost by the state. Relying upon the prosecuting attorney's memory of the lost DCF records, the trial justice denied defendant's motion to dismiss.

---

**1.** The Department for Children and Their Families is now known as Department of Children, Youth and Families.

John D. (John) testified to the following at trial: defendant married his mother, Helen Brisson (Helen), when John was eight years old.[2] Approximately one year after the marriage, defendant began touching John in the area of his buttocks and penis. These incidents of touching occurred when John was fully clothed. The defendant explained to John that these incidents were mistakes or "accidents." The defendant's conduct progressed to a point where defendant would remove his own clothes and masturbate in John's presence. The defendant, at times, would remove John's clothes in order to touch John's penis and would ask John to touch defendant's penis. John testified that defendant would place John's penis in defendant's mouth. According to John, this behavior continued "like every other day" for approximately "a couple of years." The defendant directed John "not to tell anybody" and would reward John's silence with money or toys.

During the summer of 1986, Helen and her two children left defendant and moved in with a friend, Nancy Cattles (Cattles). While staying at Cattles's home, John received a telephone call from defendant inquiring if he had informed his mother of the activities that had taken place between him and defendant. John testified that at the conclusion of the telephone conversation he "was upset" and subsequently informed his mother and Cattles of defendant's behavior. In an earlier statement to the Providence police and in testimony to the grand jury, John asserted he first informed Cattles and not both his mother and Cattles together. After learning of defendant's behavior, Helen contacted DCF, and on July 8, 1986, a DCF social worker interviewed both John and Helen concerning the accusations.

Roger Boutin (Boutin), a cousin of defendant, testified that after the allegations were made against defendant, Boutin asked John if defendant had fondled him. Boutin asserted, "I asked John if he [defendant] fondled and you know touched his private spots, and John told me no; and

then I asked John if he told his mother it was a lie, and he said yes, and then he said no." Boutin neglected to report this conversation to police. The defendant was subsequently found guilty of first-degree sexual assault.

The defendant contends that the prosecutor acted improperly; therefore, it is imperative that we outline the events that precipitated the pretrial motion to dismiss the indictment. On November 2, 1988, defendant filed a motion for a subpoena duces tecum for the DCF records. On November 23, 1988, the motion justice granted the subpoena for the reports of the DCF social worker who interviewed John and Helen and for all other DCF records pertaining to John. In December 1988 DCF delivered the original records to the motion justice's chambers, where they inexplicably remained for approximately nine months. In September 1989 the motion justice transmitted the records to the prosecutor, who was to forward the records to defendant. The prosecutor had recently joined the Attorney General's office, and it was his belief that the motion justice, as a matter of practice, had turned over DCF records to the prosecution and that if the state did not have any objections, then the prosecution was to turn over the records to defense counsel. The prosecutor copied the original file, redacting either one-half or one and one-half pages. He could not specifically remember the number of pages redacted. He testified he redacted two specific items of information that he determined were irrelevant. He forwarded the redacted copy to defendant and retained the original copy.

In late September 1989 the prosecutor discovered the file was missing. After an exhaustive and unsuccessful search, he reproduced the redacted information from memory. The prosecutor then informed the motion justice that he had redacted a portion of the DCF records and that the records could not be located. The motion justice directed the prosecutor to disclose the redacted information to defendant. On September 29, 1989, the prosecutor ap-

---

**2.** The fictional name John D. has been adopted    to protect the victim.

prised defendant that Helen had taken lithium[3] and Tranxene[4] for a two-year period and had recently been diagnosed as manic depressive. On March 21, 1990, after another meeting with the motion justice, the prosecutor informed defendant that the second piece of redacted information was that Helen had informed DCF that she had been sexually abused by her parents. The prosecutor informed defendant this constituted full disclosure of the redacted information.

## I

## PROSECUTORIAL MISCONDUCT

The defendant contends that the trial justice abused her discretion by failing to dismiss the indictment. The defendant asserts that the missing page or pages of DCF's report contained "potentially exculpatory" evidence that the state concealed from defendant in violation of a court order. He argues that the file is crucial because it relates to the period in which John "opened up" regarding the molestation. The defendant contends the redacted sections may have exculpated defendant or may have warranted the filing of a lesser charge. The defendant maintains that the state acted deliberately in concealing the evidence and that the prosecutor's memory was an inadequate substitute for the redacted information. The defendant asserts that the prosecutor's behavior violated his due process rights and Rules 16 and 17 of the Superior Court Rules of Criminal Procedure.

"The scope of our Rule 16 makes it one of the most liberal criminal discovery mechanisms in the United States." *State v. Wyche*, 518 A.2d 907, 910 (R.I.1986). "Rhode Island's Rule 16 is designed to prevent surprises to both parties by [granting broad discovery] requiring extensive pretrial disclosure of facts." *Id.* The imposition of any sanction for noncompliance with discovery obligations is a matter within the sound discretion of the trial justice and absent a clear abuse of discretion

should not be overturned. *State v. Verlaque*, 465 A.2d 207, 213 (R.I.1983). Rule 16(i) provides sanctions for the failure of any party to comply with Rule 16 or any order issued pursuant to Rule 16. This court has repeatedly held that failure by the state to preserve discoverable evidence does not necessarily warrant the imposition of sanctions. *State v. Lewis*, 467 A.2d 1387 (R.I.1983).

■ We now analyze defendant's contentions of the transgressions of Rules 16 and 17 concurrently, as a nondisclosure discovery violation. "Without question, the trial justice is in the best position to determine whether any harm resulted from noncompliance with discovery motions and whether the harm can be mitigated[.]" *State v. Coelho*, 454 A.2d 241, 244–45 (R.I.1982). In *Coelho* this court outlined four factors that should be considered when reviewing Rule 16 violations. The trial justice should consider "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." *Id.* at 245. In *Wyche*, 518 A.2d at 911, this court held that the same standards that govern Rule 16 violations also govern questions of nondisclosure.

■ The United States Supreme Court has chosen to tailor its analysis of the impact of nondisclosure on the trial outcome. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). *See also State v. Burke*, 574 A.2d 1217 (R.I.1990). We do not follow the strict outcome-determinative approach formulated by the Court but instead we preferred in *In re Ouimette*, 115 R.I. 169, 342 A.2d 250 (1975), to adopt a sliding-scale analysis based on the blameworthiness of the prosecution in failing to disclose the evidence.

■ When the four-factor review as outlined in *Coelho* is applied, the reason for the nondisclosure can be dispositive concerning the likelihood of a new trial. If the nondisclosure is deliberate, the effect on

---

**3.** Lithium carbonate is a medication used to treat manic-depressive psychosis.

**4.** Tranxene is a trademark for the tranquilizer chlorazepate dipotassium.

the outcome of a defendant's trial is irrelevant; a new trial must be granted. *Wyche*, 518 A.2d at 910. Deliberate nondisclosure connotes either "a considered decision to suppress * * * for the purpose of obstructing" or the prosecutor's failure "to disclose evidence whose high value to the defense could not have escaped * * * [its] attention." *Id.* (quoting *United States v. Keogh*, 391 F.2d 138, 146–47 (2nd Cir. 1968)).

■ Although the record does not reflect any authorization from the motion justice, the prosecutor copied and redacted the records and delivered the redacted copy to defendant. The copy forwarded to defendant contained a cover-sheet notation that the prosecutor had redacted information. Approximately one month after receiving the records, the prosecutor discovered that they were missing. The prosecutor searched extensively for the missing records. He posted signs at the Attorney General's office explaining that the files had been lost, spoke to every assistant attorney general regarding the records, searched widely through his office and files, and conducted a search of the department's previous ten years' files. Of his own volition the prosecutor met with the motion justice to inform her that the records were missing and to discuss the redacted information. From memory the prosecutor conveyed to the motion justice the contents of the redacted information. She directed the prosecutor to disclose that information to defendant. At the pretrial hearing the prosecutor testified that he had "no doubt" the information that was subsequently disclosed to defendant was the information that had been redacted. The trial justice determined the prosecutor's testimony credible, and we find no reason to believe that other information was redacted and not disclosed.

This court does not sanction the state's redaction of the subpoenaed records. The prosecutor was "walking a very thin line" when he decided to redact the file without first discussing the matter with the motion justice. A court order, once issued, must be obeyed, or our system of justice evolves into a system of injustice.

We do not condone the state's behavior concerning the redactions but choose to concentrate our analysis on the subsequent loss of the records. Although the prosecutor may have been negligent in not becoming familiar with this state's discovery procedures, that behavior was not the direct cause of the nondisclosure. The record does not reflect any behavior by the prosecutor that would lead this court to believe he intentionally lost the records for the purpose of obstructing the trial process, nor is this evidence of such a "high value" that it would reach the alternate definition of deliberate nondisclosure noted in *Keogh*.

■ Where there is inadvertent nondisclosure, as we deem occurred in this case, we must move to the second element of the *Coelho* test, prejudice to the opposing party. Rule 16 "is designed to prevent 'procedural' rather than 'substantive' prejudice. Procedural prejudice occurs when defense counsel must proceed to trial unprepared." *State v. Concannon*, 457 A.2d 1350, 1354 (R.I.1983). We have held that to demonstrate procedural prejudice the defendant "must show there is a significant chance that the use and development of the withheld evidence by skilled counsel at trial would have produced a reasonable doubt in the minds of enough jurors to avoid a conviction." *Burke*, 574 A.2d at 1226 (quoting *Ouimette*, 115 R.I. at 179, 342 A.2d at 254–55). The defendant has failed to show that the use of the nondisclosed evidence would have avoided a conviction. The loss of the records was regrettable but not prejudicial.

The defendant contends the lost records, whether one page or one and one-half pages, are "potentially exculpatory" and relevant because of John's contradictory statements concerning whom he first informed of defendant's activities. The defendant must show there is a significant chance that the use of the evidence would have avoided a conviction, not the "potential" or the "possibility" that the evidence would be exculpatory. *See In re Ouimette*, 115 R.I. 169, 342 A.2d 250 (1975). The state presented only one witness, John,

and defendant was allowed to explore any contradictions in his testimony during cross-examination. The redacted information was fully disclosed to defendant five months before trial. Additionally, all the redacted information pertained to Helen, who was not a witness at trial.

On appeal, defendant admits that "the prosecutor worked * * * hard to protect the * * * information [that] * * * defendant already knew. [T]he defendant knew far more than what the records revealed * * * [because the] same material was provided in other discovery materials in far greater detail." Since defendant readily admits he had access to, and knowledge of, the redacted information from other sources, then he could not as a consequence have been prejudiced by the nondisclosure.

The trial justice found John to be a credible witness "utterly without guile" and did not find any evidence to suggest he was "out to get his stepfather." She was particularly impressed with John's honesty when he admitted defendant never forced, threatened, or struck him to coerce the behavior. John presented himself as a credible yet confused boy, one traumatized by his stepfather's behavior. The defendant has failed to show any thread of prejudice by the nondisclosure. Although we realize allowing counsel to supplement lost discovery information by memory is an extraordinary decision, upon reviewing the circumstances surrounding this particular nondisclosure, we determine that the trial justice did not abuse her discretion in failing to impose any Rule 16 sanctions.

■ The defendant also contends that the withholding of the redacted information has violated his due process right to a fair trial. "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963). "Nondisclosed evidence is material, whether or not requested by the defense, if there is a

reasonable probability that the disclosure of such information would have changed the outcome of the proceeding." *Burke,* 574 A.2d at 1226. *See United States v. Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494. As discussed earlier, we have abandoned this outcome-determinative approach and have adopted the sliding-scale approach outlined in *Ouimette.* As analyzed above, defendant has failed to show he was prejudiced by the nondisclosure and thus his due process claim must consequently fail. Furthermore, if we were to apply the outcome-determinative approach adopted by the United States Supreme Court in *Bagley,* our holding would not be altered.

■ Finally defendant challenges the nondisclosure of the evidence under a "lost evidence" theory.

" 'Before a trial justice can impose sanctions against the prosecution for loss of evidence, a defendant has the burden of demonstrating that (1) the state has acted in bad faith or was negligent with regard to the loss of evidence and (2) the defendant was prejudiced by the loss.' * * * 'Once a defendant has met this burden, the trial justice will weigh the degree of negligence or bad faith on the part of the state and the significance of the lost evidence against the strength of the untainted evidence of guilt presented by the state.' " *State v. Morejon,* 603 A.2d 730, 733 (R.I.1992).

Even assuming arguendo there was negligence or bad faith on the part of the prosecutor, defendant has failed to demonstrate prejudice. As with defendant's due process argument, this argument must fail under our *Ouimette* analysis.

## II

## IMPROPER IMPEACHMENT

The defendant contends that the trial justice abused her discretion by allowing the state to inquire, on cross-examination of a defense witness, why the witness, a cousin of defendant, failed to inform law enforcement officials that he possessed potentially exculpatory information. The de-

fense counsel elicited testimony from Boutin that he had spoken to John and that John had denied that defendant had fondled him. On cross-examination the prosecutor inquired if Boutin had notified law enforcement authorities regarding this exculpatory information.

It is well established that the scope and the extent of cross-examination rest in the sound discretion of the trial justice. *Morejon,* 603 A.2d at 736. " '[C]ross-examination of a witness is generally limited in scope to matters testified to on direct examination.' " *Id.* Questions permitted on cross-examination " 'are questions designed to explain, contradict, or discredit any testimony given by a witness on direct examination, or to test his accuracy, memory, veracity, or credibility.' " *Id.* A trial justice's ruling on the extent and scope of cross-examination " 'will only be reviewed for an abuse of discretion.' " *Id.*

A defendant's silence is not probative, nor is a defendant required to speak or volunteer information. Nevertheless the United States Supreme Court has permitted a defendant to be cross-examined in respect to prearrest silence, *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), and in the absence of *Miranda* warnings has permitted a defendant to be cross-examined on postarrest silence on the issue of self-defense, *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). Certainly the silence of a witness would be a proper subject for cross-examination and may be used to impeach his or her testimony. The witness may explain the silence on redirect examination.

The trial justice has broad discretion in determining the scope of cross-examination, and absent abuse, this court will not overrule that determination. We find nothing inherently erroneous in cross-examining a defense witness concerning a failure to inform law enforcement authorities of potentially exculpatory information. This position, however, should not be interpreted as a broad-based invitation to inquire haphazardly of every witness whether he or she reported information to law enforcement authorities. The trial justice must exercise his or her sound discretion to ensure that the jury is not misled by efforts to impeach the credibility of a witness. We determine that the trial justice did not abuse her discretion by allowing the state to pose the question.

The defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed, and the papers of this case are remanded to the Superior Court.