DECISION
Before this Court is a motion to dismiss an indictment with prejudice pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure. Onix Delvalle (the "Defendant") seeks to dismiss the January 18, 2002 Grand Jury indictment charging him with first degree sexual assault and conspiracy to commit first degree sexual assault. The Defendant bases this motion on the State's failure to present exculpatory evidence and evidence of promises, rewards, and/or inducements in violation of Rule 16 and orders compelling production of this material by this Court. The State objects to the Defendant's motion.
 BACKGROUND
A Providence County Grand Jury convened to hear charges against the Defendant and two other targets stemming from an incident alleged to have occurred on May 21, 2001 involving a young female victim. On January 18, 2002, the Grand Jury returned a secret indictment (the charges not having first been filed in the District Court) against the Defendant, charging him with first degree sexual assault, in violation of R.I.G.L. 1956 §§ 11-37-2 and 11-37-3 and with conspiracy to commit the crime of first degree sexual assault, in violation of R.I.G.L. 1956 §§ 11-1-6
and 11-37-2. The Defendant was subsequently arraigned on February 7, 2002.
On February 26, 2002, the Defendant filed motions for discovery and for the production of exculpatory evidence with the Court. On March 19, 2002, the State responded to the Defendant's requests. On July 15, 2002, the Defendant filed a motion to compel additional discovery, specifically requesting that the Court order the State to provide the Defendant with "[a]ny mental health or any other medical treatment records of the victim in this case from May 21, 2001, to date." On September 6, 2002, this Court heard the Defendant's motion. At that time, the State objected to that portion of the motion relating to the production of the victim's mental health and medical treatment records. By an Order dated September 10, 2002, this Court granted the motion in part, requiring the State "to contact the victim and to obtain the name(s) of any mental health treatment provider(s) who has (have) treated the victim from May 12, 2001 to date," and, further, that the "information shall be provided to defense counsel within twenty (20) days." On September 18, 2002, the State sent an e-mail to the Defendant, stating that the victim had not seen any mental health providers. On October 11, 2002, the Defendant received the State's supplemental response to his motion for discovery, which stated that the victim had not received any treatment since the events, but had received some support from Cindy Placella, a guidance counselor, who had previously been listed in discovery.
On October 18, 2002, the Defendant filed a motion to produce pursuant to Super. R. Crim. P. 16 and a motion for issuance of a subpoena ducestecum pursuant to Super R. Crim. P. 17(c). Through these two motions, the Defendant sought access to all notes, records, reports, summaries, and documents used, generated, and relied on during Placella's contacts with the victim. On November 18, 2002, this Court heard the Defendant's motions. At that time, the assigned trial prosecutor provided the Defendant with a one-half page of handwritten notes purportedly authored by Placella, which the trial prosecutor claimed was all that Placella had in response to the subpoena duces tecum.
On January 2, 2003, this matter was called on the trial calendar for a previously scheduled "date certain" trial for the week of January 6, 2003. At that time, the matter was continued until January 16, 2003 for a trial calendar call for the week of January 20, 2003. The matter was then continued to March 6, 2003 for a trial calendar call for a "date certain" trial for the week of March 10, 2003.
On March 5, 2003, the Defendant received supplemental discovery from the State in the form of the victim's impact statement. These documents contained information that the victim had been treated by at least three mental health treatment providers as a result of the incident giving rise to the present indictment and had a past suicide attempt, in contradiction to its previous disclosure made on October 11, 2002. The certification date on the victim impact statement executed by the victim indicates that the statement was mailed to the Department of the Attorney General on March 5, 2002. On March 6, 2003, the matter was continued to May 1, 2003 for a trial calendar call for the week of May 5, 2003. Also on March 6, 2003, the State gave the victim $50 for the purpose of establishing phone service from her current location in Maryland.[1] On March 13, 2003, defense counsel received the State's supplemental response relating to disclosure of promises, rewards, or inducements indicating this disbursement.
At a hearing on the Defendant's motion to compel held on April 3, 2003, the prosecutor informed this Court that he had put the victim impact statement in his file without reading it and did not realize the nature of this oversight until March 4, 2003 when reviewing his file. The prosecutor then admitted his negligence and, further, represented to this Court that he was not intentionally defying any court order. Tr. of April 3, 2003 at 11-12.
 MOTION TO DISMISS
The Defendant claims that the State deliberately and continuously secreted exculpatory evidence, constituting prosecutorial misconduct, during the discovery process in the present matter. Because of this misconduct, the Defendant argues that dismissal is an appropriate sanction, particularly in light of the Rhode Island Supreme Court's previously elucidated view of what constitutes sanctionable prosecutorial misconduct relative to discovery. The Defendant pursues this sanction on three grounds: (1) that he has been prejudiced because of the State's discovery and exculpatory evidence transgressions;[2] (2) such conduct, if unchecked, impugns the integrity of the criminal process; and (3) the obvious lack of diligence in responding to court orders regarding discovery should not be countenanced.
The State responds that its admitted violation of discovery was not an intentional violation of the Court's order to find out if the victim had been treated. The State argues that its noncompliance with the discovery order was not so egregious as to warrant dismissal because the information was ultimately disclosed voluntarily prior to trial. Additionally, the State maintains that none of the prejudices averred by the Defendant as a result of the nondisclosure interfered with his right to a fair trial.
In Brady v. Maryland, the Supreme Court of the United States determined that the withholding of evidence favorable to the accused violates the guarantee of due process, regardless of the good faith or bad faith of the prosecution. 373 U.S. 83, 87 (1963); State v. DiPrete, 710 A.2d 1266, 1270 (1998). In United States v. Bagley, the Court extended this doctrine to include impeaching evidence, as well as exculpatory evidence, which might be available to the accused. 473 U.S. 667 (1985). The Court held that failure to disclose such impeaching evidence when requested would constitute constitutional error only if it deprived the defendant of a fair trial. Id. at 678. The Rhode Island Supreme Court has held that the Brady principles have no relevance to pretrial discovery.[3] DiPrete, 710 A.2d at 1271. The Supreme Court stated:
 "[u]nder Brady the denial of due process is ripe for consideration only in the event that an accused has been convicted of an offense in circumstances in which the nondisclosure of exculpatory or impeaching evidence was deliberate or, when viewed in the context of the totality of the state's proof in the case, would have a material effect upon the outcome or would create a significant chance that such exculpatory or impeaching evidence in the hands of skilled counsel would have created a reasonable doubt in the minds of the jurors. In sum the Brady doctrine creates a post-trial remedy and not a pretrial remedy. . . ." Id.
Rule 16 of the Super. R. Crim. P., on the other hand, provides:
 "[i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, it may order such party to provide the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material which or testimony of a witness whose identity or statement were not disclosed, or it may enter such other order as it deems appropriate." (Emphasis added.)
Rule 16 permits a trial justice to impose a specified range of sanctions for discovery violations, or to "enter such other order as it deems appropriate." State v. Musumeci, 717 A.2d 56, 60 (R.I. 1998). The purpose of Rule 16 is to "ensure that both parties receive the fullest possible presentation of the facts prior to trial." State v. Garcia,643 A.2d 180, 186 (R.I. 1994) (quoting State v. Concannon, 457 A.2d 1350, 1353 (R.I. 1993)). Rhode Island's Rule 16 is among the most liberal discovery mechanisms in the United States and is intended to eliminate unfair surprise and procedural prejudice at trial. State v. Evans,668 A.2d 1256, 1259 (R.I. 1996). Procedural prejudice occurs when defense counsel must proceed to trial unprepared. State v. Brisson, 619 A.2d 1099, 1103 (R.I. 1993).
In determining whether the prosecutor's conduct warrants imposition of sanctions, this Court is mindful that "[w]ithout question, the trial justice is in the best position to determine whether any harm has resulted from noncompliance with discovery motions and whether the harm can be mitigated." Brisson, 619 A.2d at 1102 (quoting State v. Coelho,454 A.2d 241, 244-45 (R.I. 1982)). The decision to impose sanctions is left to the sound discretion of the trial justice and should not be overturned absent clear abuse. Musumeci, 717 A.2d at 60; Wyche, 518 A.2d at 911; Coelho, 454 A.2d at 245; Darcy, 442 A.2d at 902. In exercising its discretion, this Court is reminded that a trial justice must consider what is "right and equitable under all of the circumstances and the law."Coelho, 454 A.2d at 245 (quoting State v. Allan, 433 A.2d 222, 225 (R.I. 1981)). When reviewing Rule 16 violations, the trial justice should consider, together with all the other facts and circumstances, (1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors. Musumeci, 717 A.2d at 60 (citingCoelho, 454 A.2d at 245).
This Court is also cognizant of the salient observations contained in the decisions of our Supreme Court that recognize the importance of protecting the integrity of the criminal discovery process. Our Supreme Court has spoken with clarity and force in describing the effect discovery violations have on the criminal justice system. The Supreme Court has emphatically stated:
 "The primary duty of a prosecutor is to achieve justice, not to convict. This court will not countenance prosecutorial misconduct. (Citations omitted). It would be a fraud and a sham indeed to call a system of justice one in which an accused, who already must defend against the full prosecutorial machinery and investigative resources of the government, is allowed to be ambushed by the prosecution at the trial which is the one opportunity he or she has to clear his or her name." State v. Powers, 526 A.2d 489, 494 (R.I. 1987).
In discussing a prosecutor's duty to comply with court-ordered discovery, the Supreme Court has further declared that there is no question that "[a] court order, once issued, must be obeyed, or our system of justice evolves into a system of injustice." Brisson, 619 A.2d at 1103. Finally, it has been forcefully noted that our system of jurisprudence must ensure that the prosecuting arm of government be discouraged from exhibiting a "cavalier attitude towards and a reckless disregard for [discovery] rules implemented to ensure the fair and efficient administration of criminal justice." Musumeci, 717 A.2d at 75 (Goldberg, J., concurring in part and dissenting in part).
"Although punishment and deterrence are valid and important considerations in selecting a sanction under Rule 16 and the trial justice should choose a sanction sufficiently potent to achieve such goals when the circumstances call for such a result, even weightier policy considerations favor resolution of criminal charges on their merits. Musumeci, 717 A.2d at 63 (citing United States v. Blue,384 U.S. 251, 255 (1966)). However, the Rhode Island Supreme Court has recognized that pretrial case dismissal is an available sanction where there has been a "repeated unexcused failure of the prosecution to make discovery in accordance with Rule 16" after a trial justice had previously ordered the prosecution to do so. Id. at 61 (quoting State v.Rawlinson, No. 85-261-C.A. (R.I. unpublished order, filed October 16, 1986)). Deliberate nondisclosure is either a "considered decision to suppress . . . for the purpose of obstructing" or the prosecutor's failure "to disclose evidence whose high value to the defense could not have escaped . . . [its] attention." Brisson, 619 A.2d at 1103 (quotingState v. Wyche, 518 A.2d 907, 910 (R.I. 1986)). Thus, "dismissals of all pending criminal charges for the state's commission of discovery violations are to be disfavored save in the most extreme circumstances."Musumeci, 717 A.2d at 63 (citing DiPrete, 710 A.2d at 1274). Indeed, the Rhode Island Supreme Court has concluded that dismissal is an appropriate sanction only in those cases where less drastic sanctions would be unlikely to achieve compliance, to deter future violations, and to remedy any material prejudice to the defendant. Id. (citing State v. Darcy,442 A.2d 900, 902 (R.I. 1982)).
If a trial justice is of the opinion that a defendant was required to expend additional resources in order to achieve full discovery, the court may award an appropriate counsel fee for such additional time as might have been spent in seeking full discovery. DiPrete, 710 A.2d at 1274. Absent substantial prejudice and a showing that no other available discovery measures can possibly neutralize the harmful effect of discovery violations, some other remedies and/or sanctions include: a trial continuance, a mistrial, evidence preclusion, an order requiring the state and/or the offending prosecutor(s) to reimburse all or a specified dollar amount of the reasonable attorney fees and other expenses incurred by the defendant as a result of the discovery violation, and/or referral of the offending prosecutor(s) to bar disciplinary counsel.Musumeci, 717 A.2d 56, 63-64. These sanctions should generally be imposed on the court's learning of a material discovery violation, even when the prosecution is guilty of grossly negligent misconduct. Id. at 64.
The Rhode Island Supreme Court has upheld a dismissal of an indictment for failure to obey an order of the Superior Court. See State v.Quintal, 479 A.2d 117 (R.I. 1984). In Quintal, the defendant, who had been charged with third-degree sexual assault, sought discovery pursuant to Rule 16 of medical reports relative to the mental health and gynecological history of the complainant. Subsequent to the trial justice's granting of the motion, the defendant moved to dismiss the indictment on the ground that the State had failed to comply with the discovery order. Before the motion to dismiss was heard, the State provided some of the requested records. The trial justice treated the motion to dismiss as a motion to compel production and granted it. Though the State subsequently provided additional records, it had not completely satisfied the court's orders. After several failures to comply with the court's order, the trial justice entered a conditional sixty-day order, specifying that if the State failed to comply, the case would automatically be dismissed with prejudice. The State failed to provide the records within that time limit and the trial justice granted the motion to dismiss. Fourteen months had passed from the granting of the Rule 16 discovery motion to the dismissal. Id. The State moved to vacate the order of dismissal, which was denied. The Supreme Court upheld the denial to vacate the order, stating that "absent enforcement of such self-executing orders, `the sanctions would have no meaning, and parties would be allowed to ignore the discovery rules and orders issued pursuant to them.'"
In State v. DiPrete, however, the Supreme Court distinguished Quintal
and held that the conditional order of dismissal to which the State had agreed in the latter case, and which required the production of certain materials, was self-executing. 710 A.2d at 1273. Therefore, the State's failure to comply could only result in the implementation of the condition of that order, that is, entry of final judgment. Id. The Court stated that it is insufficient to warrant dismissal when the sole prejudice found is that defense counsel was forced, in moving for sanctions, to disclose their strategy. Id. Though the Court observed that Rule 16(i) may include dismissal as a sanction for failure to comply with a discovery order, it declared that such a sanction "should seldom be utilized when a less drastic sanction would secure obedience to the court's orders." Id. at n. 2. The Court stated that its "limiting of the holding in [Quintal] to its particular facts will serve as a guide to trial justices in reserving the extreme and ultimate sanction of dismissal only to situations in which there has been flagrant prosecutorial misconduct accompanied by severe and incurable prejudice."Id. at 1276. The Court added that "[t]he punishment of an errant prosecutor by dismissal of the charges is in effect a punishment imposed upon the people of this state. Only in the most extraordinary of circumstances should the people of Rhode Island be deprived of their right to a trial of these charges." Id.
In State v. Brisson, the Supreme Court upheld the trial court's decision not to dismiss an indictment. 619 A.2d at 1105. In that case, the defendant moved to dismiss on the basis of prosecutorial misconduct, which consisted of the prosecutor's nondisclosure of redacted sections of records of the Department of Children and Their Families, in violation of an order of a trial justice that required the production of these records in a case involving a charge of first-degree sexual assault. Id. at 1102. The Rhode Island Supreme Court denied the relief requested because the defendant had failed to demonstrate prejudice and referred to the four-part test contained in State v. Coelho, even assuming that there was negligence or bad faith on the part of the prosecution. Id. at 1104.
Before deciding the appropriate sanction in the present matter, this Court is compelled to make findings of fact with respect to the State's admitted discovery violations. This Court has reviewed the entire record before it and finds as follows:
 (1) The State, through its prosecutor, was grossly negligent in its failure to exercise due diligence in responding to the repeated discovery requests of the Defendant regarding mental health treatment and exculpatory evidence.
 (2) The State, through its prosecutor, admits that the documents containing the information disclosing treatment by three mental health providers and a prior suicide attempt were in the State's file since March, 2002.
 (3) The State, through its prosecutor, candidly agrees that the rules of discovery were violated in this matter regarding the nondisclosure of mental health treatment and a suicide attempt and the fifty dollar payment to the alleged victim.
 (4) The failure of the State to comply with Rule 16 and its discovery obligations to the Defendant, both initially and after court orders, is the result of grossly inattentive and irresponsible conduct.
 (5) The State has admitted that it never undertook a review of its file at any time, including when it purportedly responded to discovery requests, until it began preparation for trial shortly before March 10, 2003.
 (6) The Defendant has suffered substantial prejudice by the State's withholding of the alleged victim's mental health information. This prejudice is the result of the significant period of time that has elapsed between the initial request for the information and its ultimate disclosure immediately prior to trial. Additionally, the unavailability of this information to the Defendant is of a nature which has prevented him from properly preparing for trial over the substantial period that he was denied this information.
 (7) The sudden appearance of this information days before the Defendant's trial was to begin on March 10, 2003 has resulted in a complete reassessment of the Defendant's case regarding strategy, tactics, and the need for additional and/or different resources, including expert testimony.
 (8) The delay necessitated by the eleventh hour production of this information requires the expenditure of additional time and money, as well as subjects the Defendant, who faces a capital offense, to a longer period of emotional upheaval and uncertainty. All of these consequences could easily have been avoided by prompt and proper disclosure "days after" the State had received the victim impact statement on or shortly after March 5, 2002.
There is no question that a defendant who receives complete and accurate discovery information early in a case is in a far better position to evaluate, investigate, and ultimately prepare, if necessary, for a fair trial. The passage of time has only detrimental effects on a defendant and the criminal justice system's search for truth in that recollections fade and information becomes less accessible or unavailable. Witnesses and corroborative information are more difficult to obtain. In the worst case, a defendant is encouraged to doubt what could be a legally defensible charge, resulting in a plea based upon incomplete information.
In the present matter, this Court is compelled to conclude that a sanction is warranted for this Rule 16 violation. The violation was the result of gross and inexcusable negligence on the part of the prosecutor,[4] and those assigned to assist him, in simply never looking in his file until days before a "date certain" trial in this matter. The late disclosure has caused substantial prejudice in the form of unjustifiable delay, expense, additional investigation, and a reassessment of the defense of this matter. The nature of this violation, that is, the obvious availability of the information and the highly probative value of the information to the Defendant, strikes at the heart of the integrity of the criminal process and any notion of a fair trial. Therefore, the mere continuance of the trial in this instance does not ameliorate the prejudice and injustice that has occurred.
This Court believes that the most important consideration in formulating an appropriate sanction is deterrence. This Court's only desire is compliance and respect for the rules governing criminal trials. If there are no consequences for this flagrant and substantial discovery omission, then Rule 16 is no longer a rule but merely a recommendation. Where there is no justification or acceptable excuse offered for a failure to comply with a rule of discovery and court orders related thereto, this Court is compelled to act for two reasons: (1) to discourage such obviously inadequate preparation and investigation in discovery matters and (2) to dispel the notion that the Department of the Attorney General can disregard the rules of discovery and not be held accountable. See Musumeci, 717 A.2d at 76 (Goldberg, J., concurring in part and dissenting in part) (noting the "general and pervasive" attitude that the Attorney General's office can disregard discovery rules and not be held accountable).
Having spent the past year in charge of the daily criminal calendar, it is clear to this Court that there is a lack of attention and diligence in discovery matters by the State. The frequent explanations for discovery non-compliance include: changes in administration, changes of assigned prosecutors, and the diversion of a prosecutor's attention to a more "pressing" matter.[5] The Department of Attorney General is exactly that — a "department." The resources at their disposal are greater than those of most defendants. In this case, the failure to systematically review a file thoroughly, and when required pursuant to a court order, is inexcusable and must be deterred. This Court finds that the culpability for this violation is systemic in nature rather than unique to the prosecutor involved.
It is significant to note that this is a case of delayed discovery rather than denied discovery because the Rhode Island Supreme Court has recognized that when it has ordered a new trial for discovery-rule violations or failures, the defendants in those cases were required to undergo a trial and a determination of guilt and, thus, were subjected to greater disadvantages. See DiPrete, 710 A.2d at 1272. Prior to the conclusion of the April 3, 2003 hearing in which the Defendant moved to dismiss his indictment for the State's failure to comply with discovery, the Defendant had all of the information that he had requested in his supplemental motions for discovery. The State eventually did produce the previously withheld information, prior to commencement of trial, and gave it to defense counsel after this Court ordered it to do so. In light of the Supreme Court's pronouncement disfavoring dismissals of criminal charges for the State's discovery violations except in the most extreme circumstances, this Court is constrained to fashion a less drastic sanction. See Musumeci, 717 A.2d at 63.
The State's late production of the information concerning three mental health professionals who treated the alleged victim prevented the Defendant from pursuing a defensive tack relative to that treatment and from obtaining any information he needed from them to establish any defenses he may have had. There is no evidence that would lead this Court to believe that the prosecutor intentionally withheld the requested information for the purpose of obstructing the trial process or to hinder defense counsel's efforts on behalf of the Defendant. Taking the prosecutor at his word that his failure to disclose the requested information was negligent rather than intentional, the nondisclosure, which could have been discovered had the prosecutor merely skimmed through his file, has substantially prejudiced the Defendant. As a result of the prosecutor's malfeasance, a significant delay occurred in the receipt of this information and a "delay that impairs the preparation of a defense causes the most serious form of prejudice." State v. Wheaton,528 A.2d 1109, 1112 (R.I. 1987).
In conclusion, based on the record before this Court, the fair and equitable remedy in this matter is to impose a sanction as recommended inMusumeci: "an order requiring the state and/or the offending prosecutor(s) to reimburse all or a specified dollar amount of the reasonable attorney fees and other expenses incurred by the defendant as a result of the discovery violation." 717 A.2d at 63-64. Having determined that the violation in this case is the result of a systemic failure on the part of the Department of Attorney General, and the conduct involved was grossly negligent, rather than intentional, this Court imposes upon the Department of Attorney General a monetary sanction in the amount of $1,000 payable to the Public Defender's Office of the State of Rhode Island within forty-five (45) days of the date of this decision. This figure represents partial reimbursement for the substantial time spent by the Defendant's counsel in filing motions, memoranda, and arguments before this Court as outlined in the "BACKGROUND" of this decision.
This monetary sanction of reimbursement has been set with the hope that it will assure future compliance and respect for our rules in criminal trials. Believing strongly that discovery is "a tool for truth,"[6] the Court finds that this sanction both recognizes and preserves the importance of discovery in our criminal justice system.
[1] The prosecutor, during the hearing before this Court on April 3, 2003, stated that the Supplemental Response Disclosure of Promises, Rewards, or Inducements contained a typographical error. According to the prosecutor, the State furnished the victim $50 on March 6, 2003 and not March 6, 2002 as indicated.
[2] Specifically, the Defendant avers that he has been prejudiced by the State's transgressions in the following ways:
 "1. Repeated an unnecessary court appearances that have interfered with the defendant's personal life, including his pursuit of higher education at Johnson Wales University.
 2. Anxiety caused by `gearing up' for trial and then having it repeatedly postponed.
 3. By being required to give the alleged victim notice pursuant to the CONFIDENTIALITY OF HEALTH CARE COMMUNICATIONS AND INFORMATION ACT a `preview' to both her and the state of the defendant's trial strategy including areas of inquiry and questions that will be asked on cross examination.
 4. Repeated trial preparation and re-evaluation in light of new information that has been repeatedly `dropped' upon the defendant by the state.
 5. Not enjoying the full panoply of rights that are enjoyed by those who are NOT out on bail including the necessity of posting funds to ensure his pre-trial release.
 6. Repeated notice and cancellation of trial dates for defense witnesses.
 7. Not being able to rely upon the state's discovery answers as being complete and accurate, as defendant is entitled to do." Defendant's Memo. at 10.
[3] In his dissent to the majority opinion in DiPrete, Justice Bourcier disagreed with the view that the Brady principles had no relevance to pretrial discovery. 710 A.2d at 1284. Justice Bourcier observed that the Rhode Island Supreme Court's application of Brady was at variance with other courts' interpretations of that decision. Id. In United States v.Polisi, the Second Circuit stated that "[t]he importance of Brady, then, is its holding that the concept out of which the constitutional dimension arises in these cases is prejudice to the defendant measured by the effect of the suppression upon defendant's preparation for trial, rather than its effect upon the jury's verdict." 416 F.2d 573, 577 (2d Cir. 1969) (quoted in DiPrete, 710 A.2d at 1284, Bourcier, J., dissenting). Justice Bourcier also observed that, in United States v. Donatelli,484 F.2d 505 (1st Cir. 1973), the First Circuit echoed that same interpretation of Brady. DiPrete, 710 A.2d at 1284. In Donatelli, the First Circuit stated that "[a] defendant in a criminal trial has the right to a fair trial, and as one aspect of this right he must be supplied by the prosecution all evidence which may be materially favorable to him, including evidence which would have a material effect upon trial preparation." 484 F.2d at 507-08 (quoted in DiPrete, 710 A.2d at 1284, Bourcier, J., dissenting). Justice Bourcier also cited Coelho to challenge DiPrete's narrow holding. DiPrete, 710 A.2d at 1284. TheCoelho Court determined that the "true nature of the prejudice that Rule 16 sought to remedy was `to ferret out procedural, rather than substantive, prejudice.'" 454 A.2d at 245. Furthermore, the Coelho Court stated that "[i]n determining whether this type of prejudice exists in a given case, the trial justice must determine whether the discovery violation prevented the defendant from properly preparing for trial."Id.
[4] In deciding the nature of the sanction to be imposed, this Court acknowledges that the prosecutor in this matter readily accepted responsibility for this violation, did not act intentionally, and has in all other matters before this Court conducted himself in a professional manner.
[5] It should be noted that a new Attorney General took office on January 1, 2003, resulting in personnel changes within the Department and the assignment of a new prosecutor to this matter.
[6] William J. Brennan, Jr., The Criminal Prosecution: Sporting Eventor Quest for Truth?, 1963 Wash. U. L. Q. 279, 291 (1963).