DECISION
Before this Court is a motion to dismiss an indictment with prejudice pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure. George Brito (the "Defendant") seeks to dismiss the August 17, 2001 indictment charging him with three counts of first degree child molestation. The Defendant bases this motion on the State's failure to produce complete information requested in the Defendant's motions for Rule 16 discovery, exculpatory evidence, and disclosure of Rule 404(b) evidence. The State objects to the Defendant's motion.
 BACKGROUND
A Providence County Grand Jury convened to hear charges against the Defendant stemming from three alleged incidents of first degree child molestation involving three different children. Two of the charges relate to incidents that allegedly occurred back in 1993. The third charge relates to an incident that allegedly occurred between 1991 and 1996. On August 17, 2001, the Grand Jury returned an indictment against the Defendant, charging him with three counts of child molestation in violation of G.L 1956 §§ 11-37-8.1, 11-37-2, and 11-37-3. The Defendant was arraigned on October 26, 2001.
On October 16, 2001, ten days prior to his arraignment, the Defendant filed a Motion for Rule 16 Discovery/Inspection, a Motion for Disclosure of Rule 404(b) Evidence, a Motion In Limine, a Motion for a Bill of Particulars, and a Motion for an Extension of Time for the filing of special pleas and motions until 45 days after the receipt of complete discovery. The Court granted each of Defendant's motions on October 30, 2001. On November 8, 2001, the State responded to Defendant's motions with a tangible evidence view, a response to the Motion for Exculpatory Evidence, a partial response to Defendant's Motion for Bill of Particulars, and the State's own request for discovery and alibi.
On November 27, 2001, the Defendant filed a Motion to Dismiss based on the misspelling of Defendant's first name on the indictment, a Motion to Assign Defendant's previously filed Motion for Bill of Particulars, and an extensive Motion for Exculpatory Evidence. The matter was heard by this Court on December 12, 2001, at which time the Defendant's Motion to Dismiss was denied. At that time, the Court ordered the State to respond with particularity to items 1-5 and generally to items 6,7, and 9 of the Defendant's Motion for Bill of Particulars, on or before December 26, 2001, or as soon thereafter as possible. Additionally, the December 12, 2001 Order required the State to comply with Defendant's Motion for Exculpatory Evidence by January 4, 2002. This Order also required that the State provide affidavits from the mothers of the alleged minor victims and documents that identified the names and addresses of the victims' treatment providers. Alternatively, the State could permit Defendant's counsel to subpoena the mothers of the alleged minor victims in order to determine the identity of the treatment providers. The parties were ordered to return to the Court on January 4, 2002 for a status conference in regard to the outcome of this inquiry.
On January 4, 2002, the scheduled date of the status conference, counsel for the State ("first prosecutor") requested an extension until January 18, 2002. On January 29, 2002, counsel for Defendant contacted the State to inquire about the status of the case and was informed that the responses to the December 12, 2001 Order were not forthcoming. The Defendant proceeded to file a Motion to Compel with the Court on January 30, 2002. Due to unforeseen medical problems concerning the first prosecutor, the State requested that the Defendant's Motion to Compel be reassigned to February 13, 2002.
On February 13, 2002, the motion was reassigned to February 27, 2002. The order entered on February 13, 2002 specifically stated: "that the continuance and delay occasioned in disposing of the Motion to Compel is necessitated by the prosecutor's unavailability." (Superior Court of Rhode Island, filed Feb. 13, 2002) (Order). The newly assigned prosecutor ("second prosecutor") was not available on February 27, 2002, requiring the motion to be reassigned yet again. Concerned about the continuous delay, counsel for Defendant wrote a letter to the second prosecutor on February 27, 2002, explaining that the delay in getting these answers was hampering defense counsel's ability to prepare a defense and requesting these materials as soon as possible.
On March 6, 2002, defense counsel's Motion to Compel was reassigned to March 13, 2002. On March 12, 2002, defense counsel received the State's answer to both the Motion for Exculpatory Evidence and the Motion for Discovery. The State responded that while they were not aware of any exculpatory evidence at the time, the matter was still being researched, and defense counsel's request would be treated as ongoing. In regard to the Defendant's Motion for Discovery, the State replied that it had been unable to reach the complainants and were requesting an additional week to get the information sought.
On March 26, 2002, defense counsel again contacted the second prosecutor to determine the status of the case. On March 27, 2002, Justice Gale granted the Defendant's Motion to Compel for the outstanding discovery items and continued the matter until April 24, 2002 for a status conference regarding the State's compliance with the December 12, 2001 Order. Also on March 27, 2002, defense counsel received some supplemental discovery, which included medical records. However, the discovery provided by the State at this time was seriously deficient and not in accordance with the December 12, 2001 Order. The supplemental discovery did not include any affidavits identifying the names and addresses of the treatment providers. Additionally, the records referenced other treatment providers of whom defense counsel had no knowledge.
On April 24, 2002, the parties appeared before Justice Gale for a status conference. Due to the State's failure to produce requested information, the pretrial conference was rescheduled from May 2, 2002 to June 17, 2002. At this time, the pretrial conference was continued to September 6, 2002. On account of unforeseen family health care obligations on the part of defense counsel, the pretrial conference was subsequently rescheduled from September 6, 2002 to November 19, 2002. On November 8, 2002, the pretrial conference was continued to January 27, 2003 by a stipulation that stated: "The continuance is necessary because the prosecutor is otherwise engaged in State v. Shetty and will allow both counsel the opportunity to resolve issues regarding reciprocal discovery." (Superior Court of Rhode Island, filed Nov.12, 2002) (Order).
Due to the second prosecutor's involvement with State v. Shetty, this case was continued until February 21, 2003. On January 3, 2003, defense counsel filed another motion to compel for the State to comply with the December 12, 2001 Order. This motion was assigned for hearing on January 17, 2003, was continued for hearing to February 7, 2003, and was once again continued to March 5, 2003. Some time in February 2003, the case was again reassigned to another prosecutor, ("third prosecutor").
On March 5, 2003, this Court granted defense counsel's Motion to Compel, wherein the Court afforded the State thirty days to comply with the order, up to and including April 5, 2003. The State again failed to act in accordance with the time constraints placed on it by this Court. When the State did produce supplemental discovery, on April 29, 2003, the material produced was deficient in many respects. Specifically, there were an insufficient number of releases from the named treatment providers, and the addresses given for the State's witnesses in this long delayed discovery response were found to be incorrect. The third prosecutor had complied with a portion of the December 12, 2001 Order by April 29, 2003, yet there was still information requested in that order that remained outstanding. On June 20, 2003, there was another status conference at which the Court again ordered that this material be produced. On July 17, 2003, after not receiving the requested material, defense counsel filed a motion to dismiss which was scheduled for hearing on July 23, 2003.
On July 23, 2003, defense counsel was given supplementary responses to the Defendant's Motion for Bill of Particulars. At this time, there were still other outstanding discovery requests, including the Defendant's Motion for Disclosure of Rule 404(b) Evidence. Also on July 23, 2003, the Court granted a State request for a one week continuance in the hope that full compliance with the outstanding court orders would be achieved. At that time, the third prosecutor had informed the Court that she had located a complainant in Boston and was awaiting her signature on the affidavit and release. This latest affidavit and release was received by the defense in the beginning of August rather than on July 30, 2003, the date designated by the Court. The Defendant's Motion to Dismiss, on which the Court reserved decision on July 23, 2001, is now before this Court.
 MOTION TO DISMISS
The Defendant claims that the State has repeatedly and flagrantly ignored its duty to produce relevant evidence during the discovery process in the present matter. Further, the Defendant asserts that the State's continuous refusal to comply with the Court's orders has caused the Defendant significant financial and emotional hardship. The Defendant argues that dismissal is an appropriate sanction, based upon Rhode Island Supreme Court precedent and this Court's recent declaration in State ofRhode Island v. Onix Delvalle, 2003 R.I. Super. LEXIS 106. The Defendant pursues this sanction on three grounds: (1) that he has been substantially prejudiced because of the State's habitual failure to exercise due diligence in responding to discovery requests and court orders; (2) that the defendant's right to a speedy trial has been violated by the State's inactivity in this case; and (3) the State's repeated and unmitigated failure to abide by its promises and comply with court orders regarding discovery should not be countenanced.
The State responds that it acted in compliance with Rule 16 by filing a timely response to the October 16, 2001 Motion for Discovery on November 8, 2001. The State concedes that at the time of the Defendant's Motion to Dismiss, there were outstanding requests for affidavits from the victims regarding mental health providers, as well as signed releases and further answers to the Motion for Bill of Particulars. The State maintains, however, that under Rule 16, the State is not bound to produce information that it does not have in its possession. Because the State did not have any information in its possession, custody or control regarding mental health care providers seen by the victim, at the time of the request, the State claims that there was no duty to expeditiously determine if said information existed. Tr. of September 10, 2003 at 41. Though the State concedes that it agreed to comply with the Defendant's original order which included these requests, the State asserts that such agreement was made by the State "in the spirit of cooperation" rather than pursuant to their discovery obligation under Rule 16. Tr. of September 10, 2003 at 42. Therefore, the State argues that it should not be punished for any failure on its part to produce information that the State was under no obligation to produce.
In State v. Danny Brown, 709 A.2d 465 (R.I. 1998), the Supreme Court of Rhode Island addressed the State's obligations under Rule 16 with respect to pretrial discovery. The defendant in Danny Brown, who was charged with three counts of child molestation and three counts of first degree sexual assault, filed a "motion to compel the state to produce the names and addresses of `any and all pediatricians or medical doctors from whom [complainant] may have received treatment or been examined from the period May of 1983 through January of 1987.'" Id. at 469. In addition to finding the defendant's motion to be overbroad and premature, the Court declared that the State's obligations to produce information under Rule 16 relating to pretrial discovery is limited in scope. See id. The Court went on to proclaim that "[o]ther than prior recorded statements or a summary of the witness's expected trial testimony, under Rule 16 `the only records that state is required to produce [pertaining to a prospective prosecution witness] are those regarding prior convictions.'"Id. (citing State v. Kelly, 554 A.2d 632, 635 (R.I. 1989)).
Despite the Court's finding that the State's obligations in pretrial discovery are limited, however, in Danny Brown, the Court also noted that under Rule 17(c), the Defendant can request the Court to authorize a subpoena to be served upon the alleged victims or the State for any medical treatment provided during the relevant period. See Danny Brown, 709 A.2d at 470-71. Therefore, while the Court clarified that the State is under no obligation under Rule 16 to aid the defense by producing superfluous amounts of discovery information, the Court simultaneously acknowledged the existence of other discovery tools that the Defendant can utilize prior to trial. Thus, in Danny Brown, the Court determined that the Defendant would have been entitled to request authorization to subpoena the alleged victim and/or her mother to identify the names of any physicians who might have treated the alleged victim during the period in question. See id.
The Defendant in the present case, under Rule 17(c) had a right to request authorization by this Court to subpoena the alleged victims and/or their mothers seeking the names of the mental health care providers seen after the alleged incidents of molestation. The Defendant declined initially to take such action, however, under the presumption that the State would follow through on its promise to supply this information to the Defendant in a timely fashion. Where the State agrees to produce discovery information to the Defendant and this agreement becomes an order of the court, the State is bound to abide by its promises to provide the information within the order's time constraints. Here, the Defendant had repeatedly stressed the importance of this information and relied upon the continuous promises of the State that such information would be forthcoming. See Johnson v. State of Indiana,384 N.E.2d 1035, 1040 (Ind. Ct. App. 1979) (where the State had violated a reciprocal discovery court order, upon which the defendant had relied, the court held that a one day delay mid-trial for a surprise expert witness was not an adequate remedy. That the State's non-disclosure was the "inadvertent consequence of a change in case assignments among the prosecutorial staff" did not mitigate the prejudice incurred by defendant as a result of the State's non-compliance with discovery).
Nevertheless, the State's inaccurate reporting of an alleged victim's address made it virtually impossible for the defense to utilize it's own discovery tools when the State failed to comply with the Defendant's discovery request. See Danny Brown, 709A.2d at 470 (noting that defendant could have utilized his right under Rule 17(c) to request the Court to authorize a subpoena to be served upon the alleged victim and/or her mother in order to acquire the requested information regarding the alleged victim's physicians). Consequently, this Court finds the State's argument that it was not required to produce the information in question under Rule 16 to be unavailing.
The State further contends that it should not be sanctioned because this Court's decision in Delvalle and its reasoning are not applicable in this case, as this case does not represent a repeated pattern of non-compliance with discovery matters on the part of the Department of Attorney General. Tr. of September 10, 2003 at 33. This contention indicates that the State has misconstrued the holding in Delvalle and the reason for imposing sanctions for discovery violations. This Court, in imposing sanctions, seeks not to punish any particular department, but rather to ensure that discovery rules are complied with and defendants' rights are protected. Non-compliance with the rules of discovery unduly hinders the criminal process and a defendant's rights, regardless of the frequency with which such discovery violations occur. See Hickey v. Stateof Florida, 484 So.2d 1271, 1273 (Fla. Dist. Ct. App. 1986) (declaring that once it is apparent that the State did not comply with the discovery rule, the trial court's inquiry "should at least cover the questions of whether the violation was inadvertent or willful, whether the violation is trivial or substantial, and what effect, if any, the violation had upon the ability of the other party to prepare for trial"). At the same time, however, this Court acknowledges that the State's non-compliance with discovery matters, once again, is not a single occurrence that can be attributed to any one prosecutor's failure to abide by the rules, but rather is indicative of a systemic problem on the part of the Department of the Attorney General as a whole, in managing discovery and complying with court orders in a timely fashion.
The State also maintains that the high volume of cases handled by the Department of Attorney General should excuse full compliance with the Defendant's discovery motions. Maintaining that from January 2002 until the present, the Department of Attorney General has handled nine thousand two hundred thirty-one criminal cases, the State asserts that "it's the practice of the prosecutors in the attorney general's office to comply with discovery requests as quickly as they can to the best of their abilities." Tr. of September 10, 2003 at 33-34. It is the State's position that defense counsel should be satisfied with the State's level of compliance with the order, as "ninety percent of what defense counsel initially requested in the matter was provided in a very timely manner, and the only outstanding things that were left represented a very small fraction of what she was looking for and what defense counsel needs to prepare this case for pretrial and trial." Tr. of September 10, 2003 at 35.
A heavy caseload does not excuse the State's non-compliance with the rules of discovery. In criminal cases, where defendants' constitutional rights are at stake, a heavy volume of cases cannot excuse either a judge's or a prosecutor's failure to comply with his legal duties. SeeUnited States of America v. Saltzman, 984 F.2d 1087, 1091-92 (10th Cir. 1993). The Defendant in the present case was entitled to full discovery in accordance with the orders of this Court. That the State provided defense counsel with the majority of the information requested does not countenance the fact that the Defendant has been prejudiced by not having access to all of the discovery information to which he was entitled, in a timely manner.
Next, the State argues that it should not be sanctioned for the alleged delay, because any delay on the State's part was not purposeful. The State maintains that the first prosecutor on the case responded to the Defendant's requests in a timely manner and in February 2002 was unable to continue on the case due to unexpected medical difficulties. The State further asserts that the second prosecutor, to whom this case was reassigned, was extremely busy with the case of State v. Shetty at the time, and was unable to devote any attention to the present case. The State notes that once the case was reassigned to a third prosecutor on March 2003, the State provided the Defendant with responses to all outstanding requests, except for one relating to a victim the State could not locate, in a matter of weeks. However, the State has since located the outstanding victim, and the State contends that all of the Defendant's discovery requests have now been met.
Regardless of the good faith or bad faith of the prosecution, in Bradyv. Maryland, the Supreme Court of the United States determined that the withholding of evidence favorable to the accused violates the guarantee of due process. 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215, 218 (1963); State v. DiPrete, 710 A.2d 1266, 1270 (1998). In UnitedStates v. Bagley, the Court extended this doctrine to include impeaching evidence, as well as exculpatory evidence, which might be available to the accused. 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). InBagley, the Court held that failure to disclose such impeaching evidence would constitute constitutional error only if it deprived the defendant of a fair trial. Id. at 678, 105 S.Ct. at 3381, 87 L. Ed.2d at 491. However, with respect to pre-trial discovery, the Rhode Island Supreme Court held that the Brady principles have no relevance.[1] The Rhode Island Supreme Court stated:
 "[u]nder Brady the denial of due process is ripe for consideration only in the event that an accused has been convicted of an offense in circumstances in which the nondisclosure of exculpatory or impeaching evidence was deliberate or, which viewed in the context of the totality of the state's proof in the case, would have a material effect upon the outcome or would create a significant chance that such exculpatory or impeaching evidence in the hands of skilled counsel would have created a reasonable doubt in the minds of jurors. In sum the Brady doctrine creates a post-trial remedy and not a pretrial remedy. . . ." Id.
At the same time, Super. R. Crim. P.16 provides:
 "[i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, it may order such party to provide the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material which or testimony of a witness whose identity or statement were not disclosed, or it may enter such other order as it deems appropriate." (Emphasis added.)
Rule 16 permits a trial justice to impose a specified range of sanctions for discovery violations, or to "enter such other order as it deems appropriate." State v. Musumeci, 717 A.2d 56, 60 (R.I. 1998). The purpose of Rule 16 is to "ensure that both parties receive the fullest possible presentation of the facts prior to the trial." State v. Garcia,643 A.2d 180, 186 (R.I. 1994) (quoting State v. Concannon, 457 A.2d 1350, 1353 (R.I. 1993)). Rhode Island's Rule 16 is among the most liberal discovery mechanisms in the United States and is intended to eliminate unfair surprise and procedural prejudice at trial. State v. Evans,668 A.2d 1256, 1259 (R.I. 1996). Procedural prejudice occurs when defense counsel must proceed to trial unprepared. State v. Brisson, 619 A.2d 1099, 1103 (R.I. 1993).
In determining whether the prosecutorial conduct warrants imposition of sanctions, this Court is mindful that "[w]ithout question, the trial justice is in the best position to determine whether any harm has resulted from noncompliance with discovery motions and whether the harm can be mitigated." Brisson, 619 A.2d at 1102 (quoting State v. Coelho,454 A.2d 241, 244-45 (R.I. 1982)). The decision to impose sanctions is left to the sound discretion of the trial justice and should not be overturned absent clear abuse. Musumeci,717 A.2d at 60; Wyche, 518 A.2d at 911; Coelho, 454 A.2d at 245; Darcy, 442 A.2d at 902. In exercising its discretion, this Court is reminded that a trial justice must consider what is "right and equitable under all of the circumstances and the law."Coelho, 454 A.2d at 245 (quoting State v. Allan, 433 A.2d 222, 225 (R.I. 1981)). When reviewing Rule 16 violations, the trial justice should consider, together with all the other facts and circumstances, (1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors. Musumeci, 717 A.2d at 60 (citingCoelho, 454 A.2d at 245).
Our Supreme Court has recognized the importance of protecting the integrity of the criminal discovery process. The Rhode Island Supreme Court has spoken with clarity and force in describing the effect discovery violations have on the criminal justice system. Our Supreme Court has emphatically stated:
 "The primary duty of a prosecutor is to achieve justice, not to convict. This court will not countenance prosecutorial misconduct. (Citations omitted). It would be a fraud and a sham indeed to call a system of justice one in which an accused, who already must defend against the full prosecutorial machinery and investigative resources of the government, is allowed to be ambushed by the prosecution at the trial which is the opportunity he or she has to clear his or her name." State v. Powers, 526 A.2d 489, 494 (R.I. 1987)."
In discussing a prosecutor's duty to comply with court-ordered discovery, our Supreme Court has further declared that there is no question that "[a] court order, once issued, must be obeyed, or our system of justice evolves into a system of injustice." Brisson, 619 A.2d at 1103. Finally, it has been forcefully noted that our system of jurisprudence must ensure that the prosecuting arm of government be discouraged from exhibiting a "cavalier attitude towards and a reckless disregard for [discovery] rules implemented to ensure the fair and efficient administration of criminal justice." Musumeci, 717 A.2d at 75 (Goldberg, J., concurring in part and dissenting in part).
"Although punishment and deterrence are valid and important considerations in selecting a sanction under Rule 16 and the trial justice should choose a sanction sufficiently potent to achieve such goals when the circumstances call for such a result, even weightier policy considerations favor resolution of criminal charges on their merits." Musumeci, 717 A.2d at 63 (citing United States v. Blue,384 U.S. 251, 255 (1966)). However, the Rhode Island Supreme Court has recognized that pretrial case dismissal is an available sanction when there has been a "repeated unexcused failure of the prosecution to make discovery in accordance with Rule 16" after a trial justice had previously ordered the prosecution to do so. Id. at 61 (quoting State v.Rawlinson, No. 85-261-C.A. (R.I. unpublished order, filed October 16, 1986)). Deliberate nondisclosure is either a "considered decision to suppress . . . for the purpose of obstructing" or the prosecutor's failure "to disclose evidence whose high value to the defense could not have escaped . . . [its] attention." Brisson, 619 A.2d at 1103 (quotingState v. Wyche, 518 A.2d 907, 910 (R.I. 1986)). Thus, "dismissals of all pending criminal charges for the state's commission of discovery violations are to be disfavored save in the most extreme circumstances."Musumeci, 717 A.2d at 63 (citing DiPrete, 710 A.2d at 1274). Indeed, the Rhode Island Supreme Court has concluded that dismissal is an appropriate sanction only in those cases where less drastic sanctions would be unlikely to achieve compliance, to deter future violations, and to remedy any material prejudice to the defendant. Id. (citing State v. Darcy,442 A.2d 900, 902 (R.I. 1982)).
If a trial justice is of the opinion that a defendant was required to expend additional resources in order to achieve full discovery, the court may award an appropriate counsel fee for such additional time as might have been spent in seeking full discovery. DiPrete, 710 A.2d at 1274. Absent substantial prejudice and a showing that no other available discovery measures can possibly neutralize the harmful effect of discovery violations, some other remedies and/or sanctions include: a trial continuance, a mistrial, evidence preclusion, an order requiring the state and/or the offending prosecutor(s) to reimburse all or a specified dollar amount of the reasonable attorney fees and other expenses incurred by the defendant as a result of the discovery violation, and/or referral of the offending prosecutor(s) to bar disciplinary counsel.Musumeci, 717 A.2d 56, 63-64. The court, upon learning of a material discovery violation, can impose these sanctions when the prosecution is guilty of grossly negligent misconduct. Id. at 64.
The Rhode Island Supreme Court has upheld a dismissal of an indictment for failure to obey an order of the Superior Court. See State v.Quintal, 479 A.2d 117 (R.I. 1984). In Quintal, the defendant, who had been charged with third-degree sexual assault, sought discovery pursuant to Rule 16 of medical reports relative to the mental health and gynecological history of the complainant. After several failures to comply with the court's order, the trial justice entered a conditional sixty-day order, specifying that if the State failed to comply, the case would automatically be dismissed with prejudice. The State failed to provide the records within that time limit and the trial justice granted the motion to dismiss. Fourteen months had passed from the granting of the Rule 16 discovery motion to the dismissal. Id. The State moved to vacate the order of dismissal, which was denied. The Supreme Court upheld the denial to vacate the order, stating that "absent enforcement of such self-executing orders, the sanctions would have no meaning, and parties would be allowed to ignore the discovery rules and orders issued pursuant to them." Id.
In State v. DiPrete, however, the Supreme Court distinguished Quintal
and held that the conditional order of dismissal to which the State had agreed in the latter case, and which required the production of certain materials, was self-executing. 710 A.2d 1273. Therefore, the State's failure to comply could only result in the implementation of the condition of that order, that is, entry of final judgment. Id. The Court stated that it is insufficient to warrant dismissal when the sole prejudice found is that defense counsel was forced, in moving for sanctions, to disclose their strategy. Id. Though the Court observed that Rule 16(i) may include dismissal as a sanction for failure to comply with a discovery order, it declared that such a sanction "should seldom be utilized when a less drastic sanction would secure obedience to the court's orders." Id. at n. 2. The Court stated that its "limiting of the holding in [Quintal] to its particular facts will serve as a guide to trial justices in reserving the extreme and ultimate sanction of dismissal only to situations in which there has been flagrant prosecutorial misconduct accompanied by severe and incurable prejudice."Id. at 1276. The Court added that "[t]he punishment of an errant prosecutor by dismissal of the charges is in effect a punishment imposed upon the people of this state. Only in the most extraordinary of circumstances should the people of Rhode Island be deprived of the right to a trial of these charges." Id.
Later, in State v. Brisson, the Supreme Court upheld the trial court's decision not to dismiss an indictment. 619 A.2d at 1105. In that case, the defendant moved to dismiss on the basis of prosecutorial misconduct, which consisted of the prosecutor's nondisclosure of redacted sections of records of the Department of Children and Their Families, in violation of an order of a trial justice that required the production of these records in a case involving a charge of first-degree sexual assault. Id. at 1102. The Rhode Island Supreme Court denied the relief requested because the defendant had failed to demonstrate prejudice and referred to the four-part test contained in State v. Coelho, even assuming that there was negligence or bad faith on the part of the prosecution. Id. at 1104.
In considering whether a sanction is appropriate in this matter, the Court makes the following findings of fact:
 (1) Defendant filed a discovery motion pursuant to Rule 16, a motion for disclosure of 404(b) evidence, and a motion for Bill of Particulars on October 16, 2001.
 (2) As a result of the State's failure to fully comply with Defendant's discovery motions, three court orders were entered directing the State to comply with these requests. Said court orders were entered on December 12, 2001; March 27, 2001; and March 5, 2003.
 (3) The record clearly establishes that the State failed to comply with all court orders compelling compliance with Defendant's discovery requests. (4) Defendant was arraigned on October 26, 2001. Since that time the State has assigned three different prosecutors to handle this matter.
 (5) The State's explanation for failing to comply fully with Defendant's discovery motions and court orders does not excuse or justify this non-compliance over a 20 month period.
 (6) The Court finds that the Department of Attorney General lacks an established policy to insure compliance with outstanding discovery orders in the pending cases of a prosecutor who is involved in a lengthy trial.
 (7) The State admits on the record that it "certainly can't monitor every individual case. Wouldn't be remotely possible." Tr. of September 10, 2003 at 48.
 (8) Except for a period from September to November, 2002, Defendant made repeated efforts to seek compliance with outstanding discovery orders and informed the State that the delay was hampering preparation of the defense of this matter.
 (9) The offenses pending against the Defendant relate back to a period from 1991 to 1996.
 (10) The Defendant has suffered substantial prejudice by the State's failure to comply with the discovery orders. This prejudice is the result of the significant period of time that has elapsed between the initial request for the information and the time that it was ultimately produced. Additionally, the unavailability of this information to the Defendant is of a nature which has prevented him from properly preparing for trial over a substantial period and resulted in additional legal work and expense in seeking compliance by the State.
 (11) The delay necessitated by the late production of this information requires the expenditure of additional time and money, as well as subjects the Defendant, who faces a capital offense, to a longer period of emotional upheaval and uncertainty. All of these consequences could have been avoided had the State procured and provided the defense with the information required by three court orders in a timely fashion, rather than over the 20 month period following the initial request.
As this Court noted in Delvalle, a defendant who receives complete and accurate discovery information early in a case is in far better position to evaluate, investigate, and ultimately prepare, if necessary, for a fair trial. The passage of time has only detrimental effects on a defendant and the criminal justice system's search for truth in that recollections fade and information becomes less accessible or unavailable. Witnesses and corroborative information are more difficult to obtain. In the worst case, a defendant is encouraged to doubt what could be a legally defensible charge, resulting in a plea based upon incomplete information.
It was only two months ago when this Court faced a similar discovery violation in Delvalle and had to determine what, if any, sanction should be imposed. This Court is once again confronted with this issue. In the present matter, this Court is compelled to conclude that a sanction is warranted. The violation was the result of gross and inexcusable neglect on the part of the three prosecutors assigned to this case in failing to use due diligence in complying with the orders issued by the Court. The State's failures in complying with discovery orders in the present case substantially prejudiced the Defendant since these charges relate to incidents that allegedly occurred between 1991 and 1996, thus making immediate investigation a priority. The late disclosures have caused substantial prejudice in the form of unjustifiable delay, expense, additional investigation, emotional distress, and an inability to formulate the defense in this matter. As this Court found in Delvalle, the mere continuance of the trial in this instance does not ameliorate the prejudice and injustice that result from pre-trial discovery delays.
This Court believes that the most important consideration in formulating an appropriate sanction is deterrence. This Court's only desire is compliance and respect for the rules governing criminal trials. If there are no consequences for this flagrant and substantial discovery delay, then our rules are reduced to mere recommendations. Where there is no justification or acceptable excuse offered for a failure to comply with a rule of discovery and court orders related thereto, this Court is compelled to act for two reasons: (1) to discourage such obviously inadequate preparation and investigation in discovery matters and (2) to dispel the notion that the Department of the Attorney General can disregard the rules of discovery and not be held accountable. See Musumeci, 717 A.2d at 76. (Goldberg, J., concurring in part and dissenting in part) (noting the "general and pervasive" attitude that the Attorney General's office can disregard discovery rules and not be held accountable).
The explanations for discovery non-compliance in this case include: changes of assigned prosecutors, the diversion of a prosecutor's attention to a lengthy trial, and the heavy volume of cases handled by the Department of Attorney General. The State has asserted all of these occurrences as justifications for late or non-compliance with this Court's orders. During oral argument of this motion, it was clear to the Court that no policy exists in the Department of Attorney General to effectively monitor and assure compliance with outstanding discovery orders in the pending cases of a prosecutor who is engaged in a lengthy trial. Tr. of September 10, 2003 at 48. As it is unquestionable that the resources at the State's disposal are greater than that of most defendants, it is very difficult for this Court to excuse continuous neglect by the State in the handling of its discovery obligations in this case.
This is a case of delayed discovery rather than denied discovery. The Rhode Island Supreme Court has recognized that when it has ordered a new trial for discovery-rule violations or failures, the defendants in those cases were required to undergo a trial and determination of guilt and, thus, were subjected to greater disadvantages. See DiPrete, 710 A.2d at 1272. Although the Defendant did not have access to all of the information in the discovery request at the time he filed his motion to dismiss, the outstanding discovery information was eventually provided to the defense.[2] In light of the Supreme Court's pronouncement disfavoring dismissals of criminal charges for the State's discovery violations except in the most extreme circumstances, the Court is constrained to fashion a less drastic sanction. See Musumeci, 717 A.2d at 63.
The Defendant, who currently resides in Virginia, has been awaiting full discovery for over twenty months, in anticipation of traveling to Rhode Island to review all of the information with defense counsel. While there is no evidence that would lead this Court to believe that the prosecutors intentionally withheld the requested information for the purpose of obstructing the trial process, neglect of their discovery obligations has clearly hindered defense counsel's efforts on behalf of the Defendant. As a result of the nonfeasance of three different prosecutors and the Department of Attorney General's failure to effectively monitor discovery compliance in pending cases, substantial delay occurred in the receipt of information and a "delay that impairs the preparation of a defense causes the most serious form of prejudice."State v. Wheaton, 528 A.2d 1109, 1112 (R.I. 1987).
In conclusion, based on the record before this Court, the appropriate response in this matter is to impose a sanction as recommended inMusumeci: "an order requiring the state and/or the offending prosecutor(s) to reimburse all or a specified dollar amount of the reasonable attorney fees and other expenses incurred by the defendant as a result of the discovery violation." 717 A.2d at 63-64; See also Stateof Arizona v. Meza, 50 P.3d 407, 415 (Ariz. Ct. App. 2002) (holding that a restitutionary monetary sanction against the State was appropriate in order "to alleviate the cost of the extraordinary discovery burden that the State has forced the defense to undergo"); State of Idaho v.Thompson, 803 P.2d 973, 974-75 (Idaho 1989) (affirming the trial court's imposition of a monetary sanction for the "State's failure to have timely complied with defendant's requested discovery and with the court's order requiring such compliance"). Having considered the nature and circumstances of the conduct in this case, the Court shall impose upon the Department of Attorney General a monetary sanction in the amount of $4,950.00[3] payable to defense counsel within (45) days of the date of this decision. This figure represents reimbursement for the time and efforts spent by defense counsel enforcing orders requiring the State to comply with their discovery obligations.
This monetary sanction of reimbursement has been imposed with the hope that it will assure future compliance and respect for our rules in criminal trials. Believing strongly that discovery is "a tool for truth,"[4] the Court finds that this sanction both recognizes the importance and preserves the right of discovery in our criminal justice system.
[1] In his dissent to the majority opinion in DiPrete, Justice Bourcier disagreed with the view that the Brady principles had no relevance to pretrial discovery. 710 A.2d at 1284. Justice Bourcier observed that the Rhode Island Supreme Court's application of Brady was at variance with other courts' interpretations of that decision. Id. In United States v.Polisi, the Second Circuit stated that "[t]he importance of Brady, is its holding that the concept out of which the constitutional dimension arises in these cases is prejudice to the defendant measured by the effect of the suppression upon defendant's preparation for trial, rather than its effect upon the jury's verdict." 416 F.2d 573, 577. (2d Cir. 1969) (quoted in DiPrete, 710 A.2d at 1284, Bourcier, J., dissenting). Justice Bourcier also observed that, in United States v. Donatelli, 484 F.2d 505
(1st Cir. 1973), the First Circuit echoed that same interpretation ofBrady, DiPrete, 710 A.2d at 1284. In Donatelli, the First Circuit stated that "[a] defendant in a criminal trial has the right to a fair trial, and as one aspect of this right he must be supplied by the prosecution all evidence which may be materially favorable to him, including evidence which would have a material effect upon trial preparation." 484 F.2d at 507-08 (quoted in DiPrete, 710 A.2d at 1284, Bourcier, J., dissenting). Justice Bourcier also cited Coelho to challenge DiPrete's narrow holding. DiPrete, 710 A.2d at 1284. The Coelho Court determined that the "true nature of the prejudice that Rule 16 sought to remedy was `to ferret out procedural, rather than substantive, prejudice.'" 454 A.2d at 245. Furthermore, the Coelho Court stated that "[i]n determining whether this type of prejudice exists in a given case, the trial justice must determine whether the discovery violation prevented the defendant from properly preparing for trial." Id.
[2] It is noteworthy that while this court's decision was being prepared, the State untimely proffered a response to Defendant's motion to disclose 404(b) evidence, which was originally due on January 4, 2002.
[3] The Court has considered the State's objection to portions of defense counsel's bill itemizing her efforts in seeking discovery compliance. Entrees 1, 3, and 24 are stricken in their entirety and entrees 9 and 12 have been reduced by one-half, thus reducing defense counsel's request by $1,012.50.
[4] William J. Brennan, Jr., The Criminal Prosecution: Sporting Eventor Quest for Truth?, 1963 Wash. U. L. Q. 279, 291 (1963).