STATE

v.

James J. POWERS.

No. 88–467–C.A.

Supreme Court of Rhode Island.

Dec. 1, 1989.

**1300**

James E. O'Neil, Atty. Gen., Jeffrey J. Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Asst. Public Defender, Edward L. Gerstein, Providence, for defendant.

Before FAY, C.J., and KELLEHER, WEISBERGER, MURRAY and SHEA, JJ.

## OPINION

SHEA, Justice.

This matter has come before the Supreme Court a second time following our remand in *State v. Powers*, 526 A.2d 489 (R.I.1987). We affirm.

On July 3, 1981, at approximately 10 p.m. two witnesses saw a man wearing a nylon stocking over his head enter and rob the E Mart Gas station on Warwick Avenue in Warwick, Rhode Island. During the course of the robbery the night attendant at the station, a seventeen-year-old male, was shot and later died. At trial witnesses testified that defendant had borrowed a handgun prior to the robbery and later admitted shooting the attendant. The jury convicted defendant of robbery and felony murder. For a full narration of the facts we refer the reader to our earlier opinion.

The remand was ordered after our consideration of defendant's appeal from his convictions for felony murder and robbery. The defendant claimed that the state had violated his rights to pretrial discovery under Rule 16 of the Superior Court Rules of Criminal Procedure, as well as other issues.

On the probability that the resolution of one of the Rule 16 issues would be dispositive, we ordered the remand and directed the Superior Court to conduct an evidentiary hearing. At that hearing the trial justice was to consider the facts surrounding the nondisclosure of statements attributed to defendant but not disclosed to him in pretrial discovery.

It was the defendant's claim that the prosecution had deliberately withheld the statements from the defense. The statements in question, as alleged to have been made by defendant, were as follows:

1. "The only person that can get me is me," made July 10 or 11, 1981, about seven days after the murder and robbery, to a Warwick city police lieutenant and overheard by another detective.

2. "Do you think I could have done this?" asked of a Warwick police detective July 9, 1981, while they were inspecting the crime scene.

3. On September 11, 1981, while in the custody of Providence police, two Warwick police officers alleged the defendant made the statement that "when we had somebody that saw him pull the trigger, if he did it, then we would have something. Until such time as that, in effect, [we] had nothing * * *. [A]ll [police] had is what people had told us."[1]

At the hearing the police officers testified that in the police reports of their investigation they had made only brief notations that the conversations had taken place. Verbatim narrations of the conversations were not prepared.

■ Following that hearing the trial justice made the following findings:

1. That the prosecutor at the trial, first learned of the nature and content of the three oral statements involved in the remand order on the evening of May 11, 1982, at approximately 7:30 p.m.

2. That after learning of the three oral statements, the prosecutor, at the earliest available time, May 12, 1982, at ap-

---

1. This is the statement Tripp testified to during cross-examination. It is a slightly different version than what Tripp said on direct, which was,

"[Defendant] made the statement that when we had somebody that pulled the trigger, if he did it, and until then, we had nothing."

proximately 9:30 a.m., made the contents of all three statements available to the chief defense trial attorney.

3. The defendant Powers did not testify until some five days after the nature and contents of the three oral statements had been furnished to his counsel.

4. At the time that the police officers testified on rebuttal on May 18, 1982, the defendant's counsel had been informed some six days before as to both the nature and content of what each officer would be expected to testify, if permitted to testify, regarding each of the three statements.

The trial court also found that the state had met its burden of proof by clear and convincing evidence. Such findings of fact will not be disturbed on appeal unless they are shown to be clearly erroneous. *Frenning v. Dow*, 544 A.2d 145, 146 (R.I.1988).

Our review of the record fails to reveal any indication of a deliberate withholding of the fact that these statements were made by defendant. The prosecutor testified as to how he became aware of the statements, which he promptly discussed with defendant's counsel. There is no evidence in the record of the hearing that would support defendant's allegations that the prosecutor's carelessness in reviewing his files during the pretrial discovery prevented the disclosure of these statements along with other pretrial discovery material.

A review of the record leads us to the conclusion that the investigating officers did not report the statements to the prosecutor at an earlier time because they did not recognize that the statements in question had any evidentiary value. The statements were not of a type that a police officer would normally consider to be an admission crucial to an investigation. It is also apparent that this defendant's attitude and rather surly manner of speaking with the police officers was likely to have resulted in their concluding that the specific statements were not important. Furthermore, in view of other evidence presented by the prosecution, the statements in question were practically insignificant. The

other evidence we refer to is testimony of Peter D'Ambra and Gary LeMay, who testified that defendant had admitted to them that he had committed the robbery and shot the victim.

Without evidence to the contrary, this court will assume that nondisclosure of the type complained of here is inadvertent rather than deliberate. *State v. Lionberg*, 533 A.2d 1172, 1180 (R.I.1987); *State v. Concannon*, 457 A.2d 1350, 1353 (R.I.1983). In our opinion the findings of the trial justice were not clearly wrong.

■ Having reached that conclusion, however, we find our task is not finished. The defendant argues that after the trial justice found no deliberate nondisclosure, he nevertheless should have then made a determination regarding whether defendant had suffered any procedural prejudice. Procedural prejudice would occur if the discovery violation prevented a defendant from preparing an adequate defense. *State v. Coelho*, 454 A.2d 241, 244–45 (R.I. 1982). The defendant here had attempted during the hearing to amend his allegations to include claims of both deliberate nondisclosure and, alternatively, nondeliberate nondisclosure that resulted in procedural prejudice.

The trial justice declined to consider that question. In view of this refusal, the state has suggested that we remand again to the trial justice for a hearing on that point. That will not be necessary, however, because the complete record before us will enable us to perform that analysis ourselves. We shall perform that analysis by examining the four factors set forth in *Coelho* to determine whether a sanction for nondisclosure is warranted.

We first consider the reason given for the nondisclosure. The trial justice has concluded after a hearing that the nondisclosure was unintentional. As we have noted, our review of the record persuades us that he was not clearly wrong.

We next consider the extent of prejudice caused to defendant. In this case two witnesses, who were friends of defendant, testified that defendant admitted to them he

had shot the victim during a robbery. In the face of that testimony and other highly incriminating evidence, it would be difficult to say that defendant was significantly prejudiced by the statements in question. None of the statements were admissions of guilt. At the most they tended to show a confidence or cockiness that offended the police and which might offend the jurors. In view of all the other evidence presented by the state, however, it is not likely that the jury verdict would have been different if the rebuttal evidence had not been admitted.

The next consideration, the feasibility of rectifying any prejudice by a continuance, seems not to apply in this case. A continuance was suggested by the Attorney General when the issue arose. The defendant did not request one. The statements were disclosed to defense counsel, as the trial justice found, six days before the rebuttal evidence was presented and five days before defendant testified.

The final factor is whether there were any other considerations that would warrant the imposition of sanctions. We believe that there are none. Consequently we conclude that defendant is not entitled to relief on this issue.

In defendant's first appeal we considered only the implications of the rebuttal testimony because it appeared at the time that that issue could be dispositive of the appeal. Since we have now resolved that issue in favor of the state, we must consider the other issues raised in Powers's original appeal.

■ There were several other discovery violations alleged by defendant. He claimed that the prosecution failed to inform him that the owner of the gas station where the robbery and homicide occurred would testify that money was missing. The trial justice overruled defendant's objection. He did so because that witness had previously given the same testimony at defendant's bail hearing. Since defendant was aware of the prior testimony, the trial justice was justified in allowing it into the record. *See State v. Long*, 488 A.2d 427, 434 (R.I.1985).

■ The defendant also complains of the admission, over his objection, of a photograph of a gun barrel. According to defendant, the photograph had not been produced at a tangible-evidence viewing. The state insists that it was available. At trial a witness testified about digging up the barrel itself, and the barrel was admitted into evidence without objection. The trial justice ruled that there was no surprise and that it was well within his discretion to admit the photograph. *State v. Brash*, 512 A.2d 1375, 1378 (R.I.1986).

■ In addition, defendant objected to the testimony about the use of a mask, claiming that it was another Rule 16 violation. Gary LeMay, a friend of defendant, testified that in California during July of 1981, defendant admitted to him that he had committed the robbery and shot the attendant on duty. However, nothing in the pretrial discovery indicated specifically that LeMay would testify that defendant stated that he wore a mask at the time of the crime. That testimony about a mask was significant because one eyewitness testified that the gunman had worn a mask. The pretrial discovery furnished did include defendant's statement to LeMay that defendant had taken money from the victim, that defendant then had become frightened, and that because the victim had seen his face, he shot the victim in the head. The defendant made a motion to pass the case, which was denied. There was no allegation that the prosecutor knew LeMay would add the detail of the mask. LeMay had not mentioned it in his signed statement, a copy of which had been given to defendant in discovery.

On appeal defendant argued incorrectly that this case was identical to *State v. Darcy*, 442 A.2d 900 (R.I.1982). In *Darcy* the prosecution had deliberately elicited the contents of defendant's statement after having informed defendant's counsel that no such statement existed. *Darcy*, however, is clearly distinguishable from the case at bar. There is nothing in this record to indicate that the prosecutor had deliberately elicited the detail of the mask. Since

LeMay had testified, without objection, that defendant had admitted robbing the store and shooting the victim in the head because he was afraid his face had been seen, we are not persuaded that the added detail about the mask could be a basis for a new trial. Again the trial justice was acting well within the bounds of his discretion. *McKenna v. St. Joseph Hospital*, 557 A.2d 854, 858 (R.I.1989).

■ The defendant also claims that the prosecutor failed to provide a proper summary of the testimony of Raymond Ross. Ross was originally intended to be a rebuttal witness. However, when the prosecutor interviewed him before resting his case and in anticipation of rebuttal, he learned that Ross could testify not only that defendant had asked him if Ross could obtain a gun for him, which fact was disclosed in discovery, but in addition that on the night of the shooting defendant asked Ross if he could obtain .22 caliber bullets for him. The prosecutor immediately notified defense counsel that Ross would be presented in the state's case in chief rather than in rebuttal as originally planned. The defendant again informed the trial justice of this late discovery. In order to allow defendant to confer with counsel and to prepare for cross-examination, the court recessed the trial early on a Friday until the following Monday and informed defendant that more time would be available if necessary. On Monday defense counsel, when asked, said he was ready to proceed. It should be noted that when defendant later testified, he corroborated the substance of Ross's testimony. Our review of the record fails to reveal any ground for relief on this point.

The defendant asserts that the trial justice improperly limited his cross-examination of Gary LeMay. During his direct testimony for the prosecution, LeMay admitted that he had a substantial criminal record. He also admitted that he had violated his parole by going to California where shortly after the robbery and murder had occurred, he had contact with defendant. He denied that he had obtained any "deals" from the Attorney General's office, but he admitted that he was fairly well assured, before he returned to Rhode Island, that in exchange for his testimony against defendant his parole would not be revoked.

On cross-examination, defense counsel established that LeMay was under several deferred sentences at that time. On the prosecutor's objection, defense counsel was not allowed to elicit from LeMay what he understood a "deferred sentence" to mean. Also, the trial justice would not allow defense counsel to inquire into LeMay's understanding of a violation hearing. The defendant argues that this was an impermissible limitation on his right to cross-examine.

This court has stated many times that a defendant's right to cross-examine a state's witness is protected by the Sixth Amendment to the United States Constitution and article I, section 10, of the Rhode Island Constitution. *State v. Burke*, 522 A.2d 725 (R.I.1987); *State v. Manocchio*, 496 A.2d 931 (R.I.1985); *State v. Anthony*, 422 A.2d 921 (R.I.1980). A defendant may cross-examine a prosecution witness to expose that witness's bias or lack of credibility. *State v. DeBarros*, 441 A.2d 549 (R.I.1982). Nevertheless, it is well within the trial justice's discretion to limit cross-examination once defendant has conducted sufficient cross-examination to satisfy his right of confrontation. *State v. Padula*, 551 A.2d 687, 691 (R.I.1988); *State v. Edwards*, 478 A.2d 972 (R.I.1984); *State v. Freeman*, 473 A.2d 1149 (R.I.1984).

■ In this case the witness LeMay admitted that the Warwick police had agreed to assist him by testifying before the parole board on his behalf and that the police had in fact assisted him in securing his release from custody on parole. LeMay had also disclosed his substantial criminal record, including the fact that at the time of his testimony he was on probation and was subject to a deferred sentence. It was obvious to the jury that LeMay had very significant personal, selfish motives for testifying for the state. The jury was permitted to hear all that information. Only when defense counsel attempted to elicit

LeMay's understanding of what a deferred sentence entailed did the trial justice sustain the state's objections. By that point in the cross-examination defendant's constitutional right to confrontation had been amply satisfied, and the trial justice's decision to limit questioning cannot be considered an abuse of discretion.

The defense next argues on appeal the fact that the jury was allowed to learn that defendant was in custody during the trial and also that he had been in prison in the past.

During a pretrial view of several locations involved in the case, defendant, who had been transported by State Marshals in their van, was required to remain in the van while the jury viewed the different locations. The issue is not now before us since an objection and request for a cautionary instruction was not made. *State v. Girouard*, 561 A.2d 882 (R.I.1989); *State v. Farlett*, 490 A.2d 52 (R.I.1985); *State v. D'Alo*, 477 A.2d 89 (R.I.1984).

The defendant also argues that it was reversible error to allow the jury to learn that he had been in prison. That occurred during the testimony of the mother of defendant's friend, Peter D'Ambra. She testified that on the night of the robbery defendant arrived at her home unannounced. She said that she was surprised to see him. On cross-examination defense counsel attempted to establish that defendant's appearance at her house was not such an unusual event. She agreed that he had been at her home "many, many, many times in the past." Later, on redirect examination, the prosecutor attempted to pinpoint the date of his last visit prior to the night in question. She made reference to "when he was in the service." The court then asked, "How many years ago?" She responded: "I don't know how long he was in the service. I don't know how long he was in prison." The defense counsel objected and made a motion to pass the case.

██ Out of the jury's presence the trial justice heard arguments before ruling on the motion to pass. He said that the witness had inadvertently blurted out the fact of defendant's prior imprisonment and that

in his opinion a cautionary instruction would be sufficient. The trial justice then denied the motion to pass. He instructed the jury that it should "totally disregard any reference to this defendant having been anywhere in the service or in prison or anything of that nature." The trial justice then asked the jurors if any of them would have difficulty putting the matter out of his or her mind. All indicated they would not. In the absence of any indication that the jury was not capable of complying with the trial justice's cautionary instruction, this court must assume that the jury did disregard the witness's comments as it was instructed to do. *See State v. Fenner*, 503 A.2d 518, 522 (R.I. 1986).

The defendant also argues that Mrs. D'Ambra's reference to his prison experience necessitated his taking the stand. We find that argument unpersuasive. During defendant's own testimony he made several references to the times he spent in prison. It was very apparent that the principal purpose of his testimony was to contradict the testimony of Peter D'Ambra and to accuse D'Ambra of the murder and robbery. The defendant insisted that D'Ambra admitted to him that he had committed the robbery and murder. It is apparent that defendant testified solely to shift blame to D'Ambra and not as a result of Mrs. D'Ambra's testimony.

██ The final issue defendant raises concerns the admission of testimony regarding the events that culminated in his arrest. On direct examination defendant gave no details about the arrest itself. He left the jury with an impression that the arrest was "casual," to use the trial justice's word. The defendant said that while in California he read in the newspaper that the Rhode Island police were looking for him and that he returned to this state on September 10, 1981, and was arrested the next day.

The record discloses an arrest that was far from casual. The defendant admitted on cross-examination that he had been arrested at gunpoint in downtown Providence after being identified by a correctional officer. One rebuttal witness, an off-duty cor-

rectional officer, testified that he had recognized defendant and observed him walking along a busy downtown street. The correctional officer followed him. When defendant saw the correctional officer, he pointed a .38 caliber revolver at him. A Providence police officer who responded to a call to the area, while pursuing defendant, saw him attempting to discard a gun. After the defendant was apprehended, the police officer recovered the weapon. He described it as a .38 caliber revolver loaded with ammunition.

The state argues that it was proper for the prosecution, on cross-examination, to rebut inferences that may have been drawn by the jury from defendant's direct examination. We agree. We have held that a defendant's testimony may be "subjected to a searching cross-examination to rebut not only the facts stated but also the inferences and conclusions that might be drawn from such testimony." *State v. Dowell*, 512 A.2d 121, 124 (R.I.1986). Such evidence generally includes any "competent evidence which explains, contradicts or replies to any new matter raised by the defense." *Thomas v. State*, 301 Md. 294, 309, 483 A.2d 6, 14 (1984). The evidence about the circumstances of defendant's arrest was probative, and it contradicted the inference the jury could have drawn from defendant's direct testimony.

Although defendant argues that his trial was undermined by numerous erroneous and prejudicial rulings, each of which alone warrants the granting of a new trial, he also argues in the alternative that the accumulation of errors operated to deny him of a fundamentally fair trial, in violation of his constitutional rights to due process of law. Therefore, defendant contends, the court should grant him a new trial.

In *State v. Pepper*, 103 R.I. 310, 237 A.2d 330 (1968), this court held that at some point trial errors may combine so that together they operate to infect the trial fundamentally and thus violate the defendant's due process rights. We conclude on this record, however, that the trial justice committed no error, either singularly or cumulatively, that would warrant a new

trial. *See State v. Brown*, 549 A.2d 1373, 1380 (R.I.1988).

For these reasons the defendant's appeal is denied and dismissed, and the judgment of conviction of felony murder is affirmed.

In our remand in *State v. Powers*, 526 A.2d 489 (R.I.1987) we directed that defendant's conviction for robbery be vacated. The jury had found defendant guilty of robbery and felony murder with robbery being the underlying felony. The robbery, therefore, merged into the conviction for murder. The defendant cannot be convicted of both. *State v. Innis*, 120 R.I. 641, 658, 391 A.2d 1158, 1167 (1978), *rev'd on other grounds*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *State v. Boudreau*, 113 R.I. 497, 322 A.2d 626 (1974). When the case was before the Superior Court on remand the robbery conviction was not vacated. With the papers of the case now remanded finally, we direct the conviction for robbery be vacated.