[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is Appellant Edson Toro's (Appellant) Motion for New Trial based upon the State of Rhode Island's (State) failure to fully comply with pretrial discovery under Rule 16 of the Superior Court Rules of Criminal Procedure. The State objects to Appellant's motion.
 Facts and Travel
On July 7, 1997, Appellant was charged by way of District Court complaint with the murder of Luis "Cuba" Rivera (Rivera) which occurred on June 16, 1997. On January 8, 2001, Appellant's pending murder case proceeded to a jury trial. The trial lasted two weeks (a total of 9 trial days), during which time a total of 22 witnesses testified and a total of 41 exhibits were entered into evidence. The trial concluded on January 19, 2001, with the jury returning a verdict of guilty to the charge of First Degree Murder.
Subsequently, Appellant filed a Motion for New Trial which was denied on February 5, 2001. On April 10, 2001, Appellant was sentenced to the mandatory life term for the First Degree Murder charge and an additional consecutive sentence of 6 months to serve as a habitual offender. On April 11, 2001, Appellant filed a notice of appeal of his conviction to the Supreme Court.
While Appellant's appeal of his murder conviction was pending before the Supreme Court, a new witness came to light who could offer exculpatory information on Appellant's case — inmate Robert Nicholson (Nicholson). On April 16, 2002, Chief Investigator James Abbott, of the Public Defender's Office, met with Nicholson at the ACI High Security Center regarding the events of June 16, 1997. On April 17, 2002, Abbott generated an Investigative Report in relation to his meeting with Nicholson. Thereafter, on September 11, 2002, Appellant moved to remand his case to the Superior Court for purposes of filing a Motion for New Trial based on newly discovered evidence. On September 13, 2002, the Supreme Court granted Appellant's motion to remand the case to the Superior Court. On September 30, 2002, the Public Defender's Office filed the instant Motion for New Trial based on newly discovered evidence.
The hearing on Appellant's motion was heard before this Court on January 16, 2004, and on February 19, 2004. During the hearing, the defense called two witnesses, inmate Nicholson and Detective John A'Vant (Detective A'Vant). The State called one witness, John Brown (Brown).
The first witness to testify at the hearing was Nicholson, who testified that he became friendly with Brown when they were cellmates in the Protective Custody Unit in October of 2000. According to Nicholson, he and Brown discussed Appellant's case and Brown told Nicholson that "he really hadn't witnessed nothing, that he was on the phone at the time, and he was going to, I guess, try to use it as leverage with the AG's so he could get favors done just for testifying anyway, but they didn't know that." (Tr. at 3). Nicholson testified that he called Lieutenant O'Donnell to tell him about what Brown had said. On cross examination, Nicholson stated that Brown told him that he got the information, that Appellant stabbed Rivera from another inmate who had allegedly witnessed Appellant stab Rivera. (Tr. at 13). Nicholson further testified that he had a separate conversation with inmate Michael Ducharme (Ducharme), who told him "that he had witnessed [the murder] but John Brown didn't [witness the murder]." (Tr. at 20).
The defense then called Detective A'Vant who testified that Lieutenant O'Donnell "called [A'Vant] and indicated that this inmate, Robert Nicholson, had called him implying that one of the witnesses possibly did not witness the crime and said he would testify that." (Tr. at 25). Detective A'Vant testified that the witness referenced was Brown. Detective A'Vant indicated that he did not pass this information along to the prosecution because he made a determination, based on Brown's statements and other witness statements, that Brown was present. Detective A'Vant further testified that, having been involved in the case for three and a half years and having interviewed nearly five hundred inmates, he felt he was in a position where he could make a determination not to relay or disclose the information to the prosecution. (Tr. at 38).
The State then called Brown who testified that prior to October of 2000, he had given a statement to law enforcement, testified at a violation hearing and grand jury, all with regard to his knowledge of the murder of Rivera. (Tr. at 51, 52). Brown denied ever having told Nicholson that he "really hadn't witnessed anything in the Maximum Security yard back in June of 1997." (Tr. at 52). Brown further stated that he never saw, spoke with, or obtained any information from Ducharme from the time the Code White was called on June 16, 1997, until the time he gave his witness statement, testified at the violation hearing, and provided his testimony to the grand jury on June 17, 1997. (Tr. at 52).
Subsequent to the hearing on this matter, the Appellant and the State submitted memoranda in support of their respective positions. Based on these submissions and the testimony, this Court now makes a determination on Appellant's Motion for New Trial.
 Standard of Review
The United States Supreme Court has held that a criminal defendant's dueprocess right to a fair trial is violated whenever, subsequent to an accused's request, the prosecutor intentionally or unintentionally suppressed exculpatory evidence that has a material bearing on questions of guilt or punishment.Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97,10 L.Ed.2d 215, 218 (1963). Under Brady v. Maryland, the prosecutor must disclose the information if it: (1) constitutes either exculpatory or impeachment evidence and (2) is material to the outcome of the case or sentencing. Id.
Guided by the Second Circuit Court of Appeal's discussion inUnited States v. Keogh, 391 D.2d 138 (2nd Cir. 1968), the Rhode Island Supreme Court has adopted a variable standard for applyingBrady to cases where there has been prosecutorial nondisclosure of exculpatory evidence. State v. Wyche, 518 A.2d 907, 909-10 (R.I. 1986) (citing In re Ouimette, 115 R.I. 169, 342 A.2d 250
(1975). Under this standard, a deliberate failure to disclose by the state automatically entitles a defendant to a new trial, regardless of the degree of harm caused to the defendant by the prosecution's misconduct. Id. "The prosecution acts deliberately when it makes `a considered decision to suppress * * * for the purpose of obstructing' or where it fails `to disclose evidence whose high value to the defense could not have escaped * * * [its] attention.'" Id. at 910 (quoting Keogh,
391 F.2d at 146-47).
When selecting an appropriate sanction for a discovery violation, a trial justice should consider: "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." Id. at 911 (citing State v. Coelho, 454 A.2d 241, 245 (R.I. 1983). Where the nondisclosure is deliberate, however, the appellant is automatically entitled to a new trial, without inquiry into the presence of the other factors. Id. (citing State v.Concannon, 457 A.2d 1350, 1353 (R.I. 1983).
 Discussion
Appellant argues that the State's failure to disclose Nicholson's statements to defense counsel prior to trial violated Appellant's rights to pretrial discovery. It is Appellant's position that Detective A'Vant's deliberate nondisclosure of Nicholson's statements mandates that Appellant be afforded a new trial.
Conversely, the State contends that the Rhode Island State Police's failure to disclose Nicholson's statements do not constitute a deliberate nondisclosure by the State, because the statements were unknown to the office of the prosecutor. While the State concedes that Detective A'Vant knew about Nicholson's declarations prior to trial, the State asserts that because Detective A'Vant never relayed this information to the prosecution, the State cannot be said to have intentionally withheld evidence. Furthermore, the State claims that Detective's A'Vant's nondisclosure cannot be deemed as deliberate because it was based upon Detective A'Vant's good faith belief that the Nicholson information was not credible. Although the State admits that Detective A'Vant's decision not to disclose this evidence was less than ideal, the State contends that in light of the cumulative evidence against Appellant and the nature of the nondisclosed information, it is understandable that Detective A'Vant did not recognize the Nicholson information to have evidentiary value. Thus, the State maintains that the nondisclosure of the Nicholson information does not rise to the level of a deliberate nondisclosure which would automatically entitle Appellant to a new trial. This Court disagrees.
The key factor in determining whether there has been a deliberate nondisclosure of discovery is the State's knowledge of and possession of the information prior to the trial. In Statev. Wyche, 518 A.2d 907 (R.I. 1986), the Rhode Island Supreme Court held that the State's nondisclosure of blood alcohol test results to defense counsel prior to trial constituted a deliberate nondisclosure, entitling the defendant to a new trial. 518 A.2d at 910. In so finding, our Supreme Court rejected the state's contention that the prosecutor had no duty to disclose the blood alcohol test results because there was no written report or record of the test. Id. at 910. The Court reasoned that an approach toward discovery which requires the prosecution to produce written but not oral test results in its possession invites abuse by the state. Id. at 911.
In the instant case, it is undisputed that the police department had knowledge and possession of Nicholson's statements prior to trial. Lieutenant O'Donnell spoke directly with Nicholson regarding Brown's testimony and this information was then passed on to Detective A'Vant, who had been dealing with Appellant's case for three and a half years. This information was never disclosed to defense counsel prior to trial despite the fact that the statements at issue concerned the testimony of a key eyewitness to the alleged crime.
This Court rejects the State's contention that the police department's failure to disclose Nicholson's statements does not constitute a deliberate nondisclosure by the State, because the statements were unknown to the office of the prosecutor. The lack of the prosecutor's own knowledge about the nondisclosure of Nicholson's statements does not prevent the withholding of a new trial, where the police were clearly aware of the evidence at issue. To deny Appellant a new trial on the basis that the nondisclosure was the fault of the police rather than the prosecutor, would significantly undermine the purpose of Brady
requirements. "The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney were guilty of the nondisclosure." Barbee v.Warden, 331 F.2d 842, 846 (4th Cir. 1964).
The facts of the case at bar bear substantial similarity to the facts of Barbee v. Warden. In Barbee, the police deliberately suppressed ballistic reports and fingerprint tests tending to show that a revolver different from the defendant's own had been suppressed. Id. at 844. The Fourth Circuit Court of Appeals held that the lack of the prosecutor's own knowledge about the suppression of this evidence did not mitigate the police's deliberate nondisclosure of this evidence. Id. at 846. In finding that the police's deliberate nondisclosure was attributable to the state, the Fourth Circuit reasoned that "[f]ailure of the police to reveal such material evidence in their possession is equally harmful to a defendant whether the information is purposely or negligently, withheld." Id. The Fourth Circuit went on to declare:
 "The duty to disclose is that of the state, which ordinarily acts through the prosecuting attorney; but if he too is the victim of police suppression of the material information, the state's failure is not on that account excused. We cannot condone the attempt to connect the defendant with the crime by questionable inferences which might be refuted by undisclosed and unproduced documents then in the hands of the police. To borrow a phrase from Chief Judge Biggs, this procedure passes `beyond the line of tolerable imperfection and falls into the field of fundamental unfairness.'" Id.
Additionally, this Court finds unpersuasive the State's contention that Detective A'Vant's nondisclosure was not deliberate because Detective A'Vant reasonably concluded that the evidence was not credible. It was not Detective A'Vant's place to make a unilateral decision about the credibility or evidentiary value of Nicholson's statements, especially considering those statements addressed a key eyewitness's testimony.
The State's reliance on the Rhode Island Supreme Court's decision in State v. Powers, 566 A.2d 1298 (R.I. 1989), is misplaced. Powers concerned a defendant who appealed his conviction of robbery and felony murder on the grounds that the prosecution deliberately withheld statements from the defense.Id. at 1300. The statements in question were made by the defendant during his investigation and expressed defendant's belief that the police had nothing upon which to convict him at the time. Id. An evidentiary hearing was held at which the police officers testified that in the reports of their investigation they had made only brief notations that the conversations had taken place because they believed these statements lacked evidentiary value. Id. Agreeing with the state's position, the Rhode Island Supreme Court held that the nondisclosure the defendant complained of was inadvertent rather than deliberate. Id. at 1301. In so finding, the Court considered all of the surrounding circumstances including the "defendant's attitude and his rather surly manner of speaking with the police officers." Id. The Court reasoned that because "[t]he statements were not of a type that a police officer would normally consider to be an admission crucial to an investigation" and were "practically insignificant" in light of the other evidence, the nondisclosure could not be deemed deliberate. Id.
The facts of the instant case are substantially different from those in Powers. In contrast to the statements in Powers, the statements at issue here were made by a third party who had no self-interest in Appellant's case. More importantly, the statements concerned the credibility of a key eyewitness's testimony and had the potential to significantly impact the trial. There is little doubt that such information would have been useful to the defense in preparing for its cross examination of Brown, even if only for impeachment purposes. Thus, this Court finds Detective A'Vant's nondisclosure in the present case bears little resemblance to the investigator's nondisclosure inPowers and cannot be described as inadvertent. As the disclosure was deliberate, this Court need not consider the additional factors outlined in State v. Wyche, 518 A.2d at 911.
 Conclusion
For the foregoing reasons, this Court finds that the State's nondisclosure of Nicholson's statements violated Appellant's rights to pretrial discovery. Appellant's Motion for a New Trial is hereby granted.
Counsel shall submit appropriate judgment for entry in accordance with this decision.