November 30, 2018

**Supreme Court**

No. 2017-121-C.A.

(P2/14-245A)

| | |
|---|---|
| State | : |
| v. | : |
| Troy Footman. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                              :

v.                              :

Troy Footman.                  :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  After a jury trial in the Superior Court, Troy Footman (Footman or defendant) was convicted of two counts of sex trafficking of a minor, in violation of G.L. 1956 § 11-67-6 (counts one and two); two counts of pandering or permitting prostitution, in violation of G.L. 1956 § 11-34.1-7(b) (counts three and four); and one count of driving a motor vehicle with a suspended license, in violation of G.L. 1956 § 31-11-18 (count five).  The trial justice imposed two concurrent sentences of forty years to serve for the two counts of sex trafficking of a minor; a consecutive sentence of five years to serve for one count of pandering or permitting prostitution; a concurrent sentence of five years suspended, with probation, on the second count of pandering or permitting prostitution; and a term of thirty days to serve and a fine of $250 for driving with a suspended license.  Because the parties have waived oral argument before the Court, we decide this appeal on the basis of the briefs.

Before this Court, defendant advances three assignments of error.  First, defendant contends that he received constitutionally deficient notice of the charges against him because the trial justice denied his motion for an amended bill of particulars.  Next, defendant claims that his convictions for two counts of sex trafficking of a minor and two counts of pandering or

permitting prostitution violate the Double Jeopardy Clauses of the United States and Rhode Island Constitutions. Finally, defendant argues that the trial justice erred in denying his motion for a mistrial after a witness testified to a conversation she had with defendant about human trafficking and his concern about returning to jail. For the reasons set forth in this opinion, we vacate the judgment of conviction with respect to counts one and two, and affirm the judgment in all other respects.

**Facts and Travel**

The facts in this case recount a chronicle of debauchery and sexual exploitation of a fourteen-year-old runaway girl. On January 30, 2014, defendant was charged by criminal information with two counts of sex trafficking of a minor, two counts of pandering or permitting prostitution, and one count of driving with a suspended license. A jury trial commenced on July 8, 2015, and the following facts were revealed through the testimony of various witnesses.

After an argument with her parents because she had slept over at a friend's house without their permission, young Natalie[1] ran away from home. Natalie first sought refuge at a community shelter near Boston, where she encountered a friend, Nambo "Meme" Gaye (Gaye), who had also run away from home. After a month and a half on the run, staying with various friends, Natalie and Gaye arrived at the home of another friend, Kadiesha Jackey (Jackey), where they stayed for approximately one month. One afternoon, after an outing to a fast-food restaurant, Natalie's friends told her to fix her hair because they had met a man named Troy who asked them if they wanted to earn some money by making a music video. That man was defendant. The three girls proceeded to defendant's home.

---

[1] We use a pseudonym to protect the privacy of the complaining witness.

During their visit, defendant and the three girls were joined by two other people—Karen Van Buren (Van Buren), who was employed by defendant in some capacity, and another gentleman who was a friend of defendant. When asked how old they were, Jackey disclosed her true age—seventeen years old—but Gaye, who was fifteen at the time, lied and said that she was seventeen, while Natalie, who was fourteen at the time, told defendant that she was eighteen. Natalie testified that she lied about her age because she "wanted to be older[.]" The defendant then began to discuss "dancing" with the three girls and explained that it was a way to make "fast money." The defendant gave Natalie his number and told her that, if she ever needed anything, she could contact him.

Two weeks later, Jackey's mother learned from an Amber Alert that Natalie was a missing child; she asked Natalie to leave the home. With no money and no other place to go, Natalie contacted defendant, who invited her to live at his home. Soon thereafter, the two began an intimate sexual relationship. The defendant initially paid for all living expenses, including rent, food, and utilities, and gave Natalie extra money for personal expenses. However, defendant urged Natalie to get a job and again raised the topic of dancing or stripping at a club. After Natalie disclosed that she had not been home and therefore had no birth certificate or other form of identification, defendant assured her that he "could handle all that." The two traveled to the Jamaica Plain neighborhood of Boston, where they acquired a fake Delaware identification card for Natalie. The identification card included Natalie's photo, the name "Maxine Cooper," and a birth date of April 13, 1991, making Natalie twenty-one years old at that time. The defendant also gave Natalie a fake Boston College student identification card with the name "Maxine Cooper."

Shortly thereafter, on March 12, 2013, defendant and Van Buren drove Natalie to Cheaters, an exotic dancing club in Providence. Upon arrival, defendant instructed Natalie to act mature and ask for Paul "Paulie" Calligano (Paulie), the manager of Cheaters at that time. Natalie followed Van Buren into the club, introduced herself to Paulie, and expressed a willingness to embark on a dancing career. After Paulie examined and photocopied her identification documents, he told Natalie that she was hired and that she was required to sign an acknowledgement that she would be terminated if she engaged in "any activity that is deemed to [b]e in violation of the Rhode Island indoor [p]rostitution law." After Natalie executed the document, Paulie gave Natalie a tour of the facility and briefly described her duties as an exotic dancer. Paulie also explained Cheaters' pay-to-dance fee structure and told her that she would have to pay $35 to the manager on duty each day that she worked. The defendant gave Natalie $35 for her first shift and told her that Van Buren was going to take her "under her wing[.]"[2] He also advised Natalie "[t]o be extremely polite to the customers and to try and get as much money as [she could]." At the end of her first shift, defendant picked Natalie up from Cheaters, asked her how much money she earned, and explained that he would keep the money so that she was not carrying cash when she reported for work.

The defendant had greater ambitions for Natalie beyond her dancing career at Cheaters. He also posted sexually suggestive photographs of Natalie on the now-defunct website Backpage.com, with the expectation that Natalie would engage in sex acts for compensation.[3]

---

[2] The record before us is silent as to whether Van Buren was prosecuted for her role in these crimes.

[3] "Backpage is a classified advertising website where individuals can list a variety of products and services. Until January 2017, Backpage included an adult section containing different subcategories of various sex work professions, including escorts and strippers." *State v. Adams*, 161 A.3d 1182, 1187 n.1 (R.I. 2017) (internal citation omitted).

Interested callers would call the phone number posted on Natalie's profile, and defendant would discuss the price for each sex act and schedule an appointment. After each sexual encounter, Natalie's earnings would be relinquished to defendant. Natalie also began working in the "Godiva Room," a private area within Cheaters, where she would charge anywhere from $100 to $200 or more for performing sex acts with patrons of Cheaters. The defendant provided the condoms, and Natalie turned over the profits.[4]

Natalie continued dancing and appearing in the Godiva Room until July 29, 2013, when, pursuant to an undercover investigation, Providence police detectives Jonathan Kantorski and Louis Gianfrancesco entered Cheaters in plain clothes. The two detectives first sat at a bar and watched as defendant entered the club and spoke to Natalie. After defendant left, Det. Gianfrancesco approached Natalie, who identified herself by her stage name, Rozay. Several minutes later, uniformed officers entered the club and approached Natalie; Dets. Kantorski and Gianfrancesco then left the club. When asked for her name, Natalie first said Maxine Cooper; but, after further prompting, she disclosed her true identity and was transported to Providence police headquarters. Natalie was fifteen years old at the time. The defendant was arrested that night and later charged by way of criminal information.

On July 20, 2015, defendant was found guilty on all five counts as charged; his motion for a new trial was subsequently denied, and the trial justice imposed the sentences as set out above. The defendant timely appealed.

Before this Court, defendant proffers three arguments: (1) the trial justice committed reversible error when she denied defendant's motion for an amended bill of particulars as to the

---

[4] During this time, Natalie and defendant also persuaded Gaye to work at Cheaters and perform sex acts for compensation while at the club. Gaye, too, gave all of her earnings to defendant. However, approximately two months after she first began working for Cheaters, Gaye was fired.

two counts of sex trafficking of a minor and the two counts of pandering or permitting prostitution; (2) the imposition of multiple punishments for the two counts of sex trafficking of a minor and two counts of pandering or permitting prostitution, all of which arose out of the same conduct, violated his constitutional protection against double jeopardy; and (3) the trial justice erred in denying defendant's motion for a mistrial because the cautionary instruction to the jury was insufficient to eradicate the taint of the offending testimony.

## Analysis

### Sex Trafficking of a Minor—*State v. Maxie*, 187 A.3d 330 (R.I. 2018)

As an initial matter, defendant was convicted of two counts of sex trafficking of a minor, in violation of § 11-67-6, which has since been repealed and replaced with G.L. 1956 § 11-67.1-3. *See* P.L. 2017, ch. 232, § 1; P.L. 2017, ch. 260, § 1. However, in *State v. Maxie*, 187 A.3d 330 (R.I. 2018), this Court declared that § 11-67-6 was flawed in that the statute failed to charge a criminal offense. *Maxie*, 187 A.3d at 341. Although § 11-67-6 contained a definitional section, a section describing various types of conduct, and a penalty section, there was no declaration that the conduct set forth in the statute was a felony crime. *See id.* at 338-39, 341. Accordingly, defendant's convictions under counts one and two, sex trafficking of a minor, are vacated on the grounds that the statute he was charged under, § 11-67-6, failed to charge an offense. We shall proceed to address defendant's appellate contentions as they relate to the remaining counts for which defendant stands convicted.

### Bill of Particulars

### Standard of Review

This Court has held that "the function of a bill of particulars is to apprise a defendant of the evidentiary details establishing the facts of the offense when such facts have not been

included in the indictment or information." *State v. LaChapelle*, 638 A.2d 525, 527 (R.I. 1994). A bill of particulars is not comparable to a party's answers to a set of interrogatories; instead, "[t]he primary purpose [of a bill of particulars] is to supply the defendant with such particulars as are necessary in order that judicial surprise is avoided at trial." *State v. Hunt*, 137 A.3d 689, 693 (R.I. 2016) (quoting *State v. Saluter*, 715 A.2d 1250, 1253 (R.I. 1998)).

In addition, this Court has stated that "the granting of a bill of particulars in any civil or criminal proceeding is within the discretion of the justice who hears the motion and his discretion will not be disturbed unless it appears that there has been an abuse of discretion." *State v. Gregson*, 113 A.3d 393, 397 (R.I. 2015) (quoting *Union Mortgage Co. v. Rocheleau*, 51 R.I. 345, 348, 154 A. 658, 660 (1931)).

### Discussion

The defendant argues that the trial justice abused her discretion when, on the eve of trial, she denied his motion for an amended bill of particulars, contending that he was forced to defend this case in the absence of constitutionally adequate notice. We reject this argument.

On June 18, 2015, defendant moved for a bill of particulars pursuant to Rule 7(f) of the Superior Court Rules of Criminal Procedure.[5] The state provided an answer on June 30, 2015, and responded that defendant had committed, *inter alia,* various acts of sex trafficking and pandering or permitting prostitution between certain specific dates. As to the counts for pandering or permitting prostitution, the state declared "[t]hat the defendant did knowingly permit, allow, transport or offer or agree to receive [Natalie], a juvenile female, into a business

---

[5] Although defendant was charged by information on January 30, 2014, he did not file for a bill of particulars until June 18, 2015—seventeen months after being charged and just twenty days prior to the commencement of trial. Rule 7(f) of the Superior Court Rules of Criminal Procedure provides that "[a] motion for a bill of particulars may be made within thirty (30) days after arraignment or at such later time as the court may permit."

for the purpose of committing any commercial sexual activity, or to aid or abet or participate in commercial sexual activity, to wit sexually explicit performance[,]" and "[t]hat the defendant did, knowing [Natalie], a minor, to be a prostitute, derive support or maintenance in whole or in part from the earnings, or proceeds of commercial sexual activity, or did share in the earnings, proceeds, or money from commercial sexual activity, to wit sexually explicit performance." The defendant challenged the sufficiency of the state's response and argued that the response deprived him of the minimum notice required under the law. The trial justice denied this motion for an amended bill of particulars, concluding that the bill of particulars and the state's response to defendant's discovery requests gave defendant ample notice upon which to prepare his defense.

We are of the opinion that the trial justice did not err in refusing to order an amended bill of particulars. The defendant has failed to demonstrate how the denial of the motion has prejudiced him in any way. The bill of particulars listed the evidentiary facts that the state intended to prove regarding the crimes of sex trafficking of a minor and pandering or permitting prostitution. This response, coupled with the abundant pretrial discovery, including several witness statements detailing defendant's conduct from May 9, 2013, to July 30, 2013, more than satisfied the notice requirement. This material afforded defendant an adequate opportunity to inform himself of the evidence the state was prepared to present at trial. Accordingly, the trial justice did not abuse her discretion in denying defendant's motion for an amended bill of particulars.

## Double Jeopardy

### Standard of Review

An alleged violation of the Double Jeopardy Clause presents this Court with a mixed question of law and fact. Therefore, "our review of such a claim is *de novo*." *State v. Marsich*, 10 A.3d 435, 441 (R.I. 2010). Within the purview of *de novo* review, a trial justice's findings of historical fact are accorded great deference. *See, e.g.*, *Lopes v. State*, 111 A.3d 344, 348 (R.I. 2015).

### Discussion

The defendant argues that the imposition of multiple punishments for two counts of sex trafficking of a minor and two counts of pandering or permitting prostitution, which he contends arise from the same conduct, was improper and violated his constitutional protections against double jeopardy. Because we are vacating defendant's convictions for sex trafficking of a minor as set forth in counts one and two, defendant's argument in that respect is moot. *See United States v. Bass*, 310 F.3d 321, 323 (5th Cir. 2002) (holding that double jeopardy argument is moot where court vacated one of the convictions at issue on other grounds); *United States v. Otis*, 127 F.3d 829, 835 (9th Cir. 1997) (same).

In addition, Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure provides that "[t]he defense of double jeopardy * * * may be raised only by motion before trial." Therefore, "a defendant's failure to raise such a motion before trial precludes that defendant from thereafter raising a double jeopardy challenge." *State v. Day*, 925 A.2d 962, 977 (R.I. 2007). Our careful review of the record reveals that defendant did not raise the defense of double jeopardy prior to trial, as required by Rule 12(b)(2). The defendant has not presented a compelling reason for this Court to grant relief from the waiver of his double jeopardy argument

occasioned by his failure to raise it in a pretrial motion to dismiss. We therefore also consider this issue to be waived.

## The Motion to Pass the Case

### Standard of Review

When called upon to review a trial justice's ruling on a motion for a mistrial, this Court affords the decision great weight and will disturb the decision only if it was clearly wrong. *State v. Fry*, 130 A.3d 812, 828 (R.I. 2016). We often have stated that "[t]he trial justice has a 'front row seat' during the trial so that he can best evaluate the effects of any prejudice on the jury." *State v. Barkmeyer*, 949 A.2d 984, 1007 (R.I. 2008) (quoting *State v. Tempest*, 651 A.2d 1198, 1207 (R.I. 1995)). As such, when a trial justice rules on a motion for a mistrial, he or she "must determine whether the evidence would cause the jurors to be so inflamed as to make them unable to decide the case on the basis of the evidence presented." *State v. Enos*, 21 A.3d 326, 332 (R.I. 2011) (quoting *State v. Luciano*, 739 A.2d 222, 228 (R.I. 1999)). A mistrial is appropriate only when a timely cautionary instruction cannot cure the prejudice. *See State v. Disla*, 874 A.2d 190, 198 (R.I. 2005). "In the absence of any indication that the jury was not capable of complying with the trial justice[']s cautionary instruction, this [c]ourt must assume that the jury did disregard the witness comments as it was instructed to do." *Id.* (quoting *State v. Powers*, 566 A.2d 1298, 1304 (R.I. 1989)).

### Discussion

The defendant argues that the trial justice erred in denying his motion for a mistrial when Natalie disclosed that she learned about human trafficking during a conversation with defendant in which he discussed returning to prison. He also contends that the cautionary instruction given by the trial justice was insufficient to cure the prejudicial effect. We disagree.

- 10 -

During cross-examination of Natalie, defendant attempted to impeach her credibility by highlighting the inconsistencies between the statements she made to the police on July 30, 2013, and her testimony at trial. Specifically, when Natalie was first interviewed, she told the officers that, on the day she began working as an exotic dancer at Cheaters, she and defendant took a commuter train from Boston to Providence. At trial, however, she testified that she and defendant went by automobile. When questioned by defendant about these inconsistent statements, Natalie testified, "I told them that we took the commuter rail because I didn't, once again, want to get [defendant] in trouble because it would be trafficking if we took a car." On redirect examination, the state asked Natalie how she learned of the term "human trafficking," and she testified that defendant explained "trafficking" to her when they were talking "[a]bout him going to jail again." The defendant objected, asked for a sidebar, and moved for a mistrial "based on the witness's remark to the jurors referencing a prior period of incarceration[.]" The trial justice denied the motion for a mistrial and, in order to eliminate any potential prejudice, struck Natalie's answer from the record and gave a comprehensive cautionary instruction to the jury:

> "THE COURT: Ladies and gentlemen, I'll strike the answer the witness just gave to the last question some reference to something to do with jail. That is not before you. There's no evidence to that effect. I have no idea what the reference is, so I'm going to strike that completely and direct you not to consider it.
> "Again, as I instructed you repeatedly yesterday, the only matters you are concerned with is [*sic*] the matters before the [c]ourt and nothing else. So that answer is stricken and you should not consider that at all. It has nothing to do with this case."

Defense counsel did not object to this instruction.

Notwithstanding defendant's contention before this Court that the prejudice caused by the jury hearing Natalie's remark was "profound and inexpiable[,]" we are not convinced that this one remark was so prejudicial that the jury would not have been able to decide the case based on

- 11 -

the abundant evidence of guilt that was admitted at trial. Furthermore, any prejudicial effect caused by Natalie's remark was sufficiently minimized by the trial justice's cautionary instruction. *See Disla*, 874 A.2d at 198 ("Certainly, the entire rationale underlying the structure of jury trials and the lyrical deference that is paid to jury findings rests upon the proposition that jurors will obey the admonitions of the trial justice and will apply the law as given to them by the justice presiding." (quoting *State v. Fenner*, 503 A.2d 518, 522 (R.I. 1986))). As we often have declared, we presume the jury was able to follow instructions from the trial justice; we are satisfied that this cautionary instruction was more than sufficient to cure any potential prejudice in these circumstances. *See State v. LaRoche*, 683 A.2d 989, 1000 (R.I. 1996). Accordingly, after reviewing the record and the trial justice's cautionary instruction, we see no reason to conclude that the jury in this case was not able to make an objective evaluation of the evidence against defendant. The trial justice, therefore, did not abuse her discretion in denying the motion for a mistrial.

Moreover, we also note that it was the defendant who opened the door to this topic when he attempted to attack Natalie's credibility on cross-examination. Again, as part of his defense, the defendant challenged Natalie's credibility by emphasizing the inconsistencies between her statements made to law enforcement agencies and her testimony at trial. This line of questioning, in particular relating to her reason for lying about the mode of transportation from state to state, opened the door for the state to explain Natalie's inconsistent statements and, specifically, to inquire into how Natalie came to learn the term "trafficking" and the context in which it was discussed with the defendant. *See State v. Mastracchio*, 112 R.I. 487, 495, 312 A.2d 190, 195 (1973) ("Once [the] defendant opened up the door to [certain] evidence in an attempt to impeach [a witness's] credibility, he could not complain when the state followed with

- 12 -

further testimony of a like character in clarification of what had been brought up on cross-examination.").  Therefore, because defense counsel opened the door during cross-examination, it was not an abuse of discretion for the trial justice to refuse to grant a mistrial when the state made inquiry into this testimony on redirect examination.

## Conclusion

For the reasons stated herein, we vacate in part and affirm in part.  We vacate the judgment of conviction with respect to counts one and two, sex trafficking of a minor, and we affirm the judgment in all other respects. The record shall be returned to the Superior Court.

SUPREME COURT – CLERK'S OFFICE

OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Troy Footman |
| **Case Number** | No. 2017-121-C.A. (P2/14-245A) |
| **Date Opinion Filed** | November 30, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Susan E. McGuirl |
| **Attorney(s) on Appeal** | For State:<br><br>Owen Murphy<br>Department of the Attorney General<br><br>For Defendant:<br><br>Megan F. Jackson<br>Office of the Public Defender |